J. G. THOMAS v. THE STATE.

1. The pleas of former acquittal and conviction, as provided for by the Code of Procedure (Pas. Dig., Art. 2951), includes every right secured at common law by such pleas.

2. To invoke the plea the two offenses must be in truth the same, though the indictments may differ in immaterial circumstances.

3. The conviction or acquittal for minor offenses is, generally, no bar to greater. If, however, on a trial of the greater offense there can be a conviction of the less, then the former acquittal or conviction will bar the greater.

4. Under an indictment for an assault with intent to murder, a conviction could not be had for unlawfully carrying a pistol; and hence a conviction for such offense would not bar the prosecution for assault with intent to murder, although brought for the same act.

5. In a trial for an assault with intent to murder, and the evidence tended to show that the parties were in a quarrel, it is error to exclude the question, asked by defendant of a witness, whether the assaulted party was under the influence of liquor at the time. Such testimony was admissible as a fact tending to show the motive, intent, or state of mind of the accused at the time of the act for which he was upon trial.

6. It is not admissible to ask a witness his opinion as to the danger likely to follow the use of a weapon in a particular mode. Such question the jury should determine.

7. Where a witness was present at an affray and seized the arm of the party attacked, it is competent for the accused to ask why the witness seized his arm, as tending to explain the effect the acts of the party attacked would likely have produced upon the accused.

Opinion of the court.

8. In felony cases it is necessary to give such instructions as are applicable to every legitimate deduction from the facts.
9. An instruction upon the law of self-defense on a trial for an assault with intent to murder, as follows, "If the party killed had been disarmed by a third party, and was in such a condition as to be unable to inflict death or serious bodily harm to the' party killing at the time the fatal blow was struck or shot fired, then the law of self-defense will not apply," is defective in not submitting to the jury the question whether the accused knew or could have known at the time such facts, and whether the accused had reasonable grounds for and did fear an attack.
10. In all cases of felony the jury should be instructed that the accused is entitled to the benefit of every reasonable doubt as to his guilt fairly and naturally arising from the evidence.

APPEAL from Johnson.    Tried below before the Hon. Charles Soward.

No brief for appellant came to the hands of the Reporters.

*Geo. Clark, Attorney-General*, for the State.

GRAY, ASSOCIATE JUSTICE.—Appellant was indicted and convicted for an assault with intent to murder D. W. Wren.

One error assigned and relied on, and which first arises on the record, is to the ruling of the court sustaining the exception of the State to the special plea of a former conviction. The plea substantially avers that the accused had previously been· tried and convicted in the same court on an indictment for unlawfully carrying a pistol on his person, which he avers was part and parcel of the offense charged in this indictment, and that he was convicted upon proof of his having the pistol on his person at the time of the assault now charged. The Code of Criminal Procedure, Article 484 (Pas. Dig., Art. 2951), declares the requisites of this special plea, viz., "that he has been before convicted, legally, in a court of competent jurisdiction, upon the same accusation, after hav-

ing been tried upon the merits for the same offense."
The right to interpose this ground of defense is not de-
rived from the Code, but from the Constitution. It is a
right secured to the citizen by all of our American consti-
tutions, which declare that "no person for the same of-
fense shall be twice put in jeopardy of life," etc. (Cons.,
Art. 1, Sec. 12.) This right had been established as a
principle of the common law, and was inherited by our
ancestors before its incorporation in any American con-
stitution. Its meaning and the extent of its application
had also been settled by that law, both in England and
America, before Texas had existence as a State. When,
then, this right was declared in the Constitution, it is un-
doubtedly presumed that the same construction and ap-
plication of it was designed to be secured. The Code of
Procedure does not define the terms used, nor declare
the extent of its application to cases. It only provides
when and how it may be pleaded, and in stating its
requisites uses almost the same terms as those used in
Blackstone's Commentaries, when treating of the pleas
of former acquittal and conviction. (Blackstone, Bk. 4,
335.)

The question made, depends on the construction and
application of the terms, conviction "for the same of-
fense." Were they construed according to their plain im-
port, and as understood in ordinary acceptation, under the
rules of construction provided in the codes they might
receive a very limited application, and the citizen thereby
be deprived of valuable constitutional rights, as pre-
viously understood. This, we conceive, the Legislature
has no power to effect; nor was it designed that those
rules of construction, provided to facilitate the due ad-
ministration of justice, should be so applied. It is quite
manifest that whatever right was secured by this plea at
common law, is included and provided for by the terms
used in the code. Does, then, the plea of appellant show

a conviction of the same offense, as held and understood by the common law?

The principle and rules of decision applicable to the plea of former conviction are the same with those of former acquittal. They rest on the same basis. The general rule is, that the crime charged should be the same—that is, that they be in truth the same, though the indictments may differ in immaterial circumstances. (1 Chitty C. L., 452.)

"But it is not in all cases necessary that the two charges should be precisely the same in point of degree, for it is sufficient if an acquittal of the one will show that the defendant could not have been guilty of the other. Thus, a general acquittal of murder is a discharge upon an indictment for manslaughter upon the same person, because the latter charge was included in the former; and if it had so appeared on the trial, the defendant might have been convicted of the inferior offense; and so an acquittal of manslaughter will preclude a future prosecution for murder; for if he were innocent of the modified crime, he could not be guilty of the same fact with the addition of malice and design." (1 Chitty C. L., 455.)

Upon this subject of charges for offenses similar in their character, but different in degree, the general rule again is, "that conviction or acquittal for minor offenses is generally no bar to greater." But there is the exception to this, that "if, however, on a trial of the major offense, there can be a conviction of the minor, then a former conviction or acquittal of the minor will bar the major." (Wharton, Sec. 563.) And it is in connection with this that the same author says: "When the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first, the plea is generally good;" and this is true, although the first trial was for misdemeanor and the second for a felony. (Wharton, Secs. 565, 566.) But we do not under-

stand from this that the first charge and trial might have
been for a misdemeanor, of which the accused could not
have been convicted on the indictment for the second, as
for an offense of a different nature, and not one merely
differing in degree.   Now, upon this indictment for an
assault with intent to murder, he might be convicted for
simple assault, assault and battery, or aggravated as-
sault, because they are each included in the charge, and
only differ in degree; but he could not have been con-
victed for unlawfully carrying a pistol on his person.
Nor is it manifest to us, that evidence that he did so
carry a pistol was necessary to support this second in-
dictment.   He might well have been convicted of the as-
sault with intent to murder without evidence that he did
unlawfully carry a pistol.   In view of the authorities, and
giving a liberal construction to the right intended to be
secured by this plea, we are of opinion that appellant's
plea was not sufficient, and the court did not err in over-
ruling it.

The second error assigned is presented by bill of excep-
tions to the exclusion of evidence by disallowance of
questions asked on cross-examination of a witness for the
State.   Error is also assigned to the charge of the court.
The grounds of these objections cannot be well under-
stood without considering the facts in evidence.   The evi-
dence for the State was given by Wren, the party
assaulted, and Hix, the bar keeper, who had witnessed
the whole transaction.   Their testimony does not materi-
ally vary, and was, in substance, that the parties had
been on friendly terms ; they casually met in the bar
room, and were standing at the bar, leaning against it,
with one Morris standing between them.   Drinks were
called for by Wren, and afterwards accused bantered him
to play at cards.   He answered, "Show your money;" to
which accused replied, "I have as much money as you
have."   Wren then said, "I am not going to be made a

d——d fool of," and thereupon the lie was given. Wren says it was first given by accused, but the bar keeper did not recollect by which; but instantly Wren seized or attempted to seize a glass tumbler, of more than ordinary size, which was on the counter, when his arm was seized by the bar keeper and firmly held. At the same time accused stepped around Morris, who was between them, and drawing his pistol, fired at Wren, powder-burning his face, drawing blood, and the force of the discharge or shot staggering him to the wall. Just as the accused drew his pistol the bar keeper let go Wren's arm, because, as he testifies, "he thought accused was going to strike Wren." This all occurred very quickly and suddenly. Wren, released by the bar keeper, instantly seized the tumbler and threw it at accused, and also a bottle. Accused escaped at one door and Wren went out at another. It was also testified by the sheriff that Wren was a man who had had a good many difficulties, and that he was a dangerous man in difficulties of that sort.

The questions asked of Hix, the bar keeper, and disallowed by the court, were these:

1. Whether Wren was under the influence of liquor at the time of the assault?

2. Whether the tumbler which Wren seized or attempted to seize at the time was a weapon with which, at the distance of a few feet, in the hands of an ordinary man, serious injury could be inflicted?

3. What induced witness to seize the arm of Wren when he seized or attempted to seize the tumbler?

As to the first question, it may or may not have been very material whether Wren was under the influence of liquor, as a general proposition; but where the question of guilt or innocence depends on the motive, intent, or state of mind of the accused at a particular time, it is important that the jury should have before them every

fact which may tend to show the exact relations and condition of the parties. All the attendant circumstances must be considered, in weighing the evidence on such a question. As a general rule it is believed to be the fact that the influence of ardent spirits or liquor does inflame the passions, and tend to produce recklessness, and more especially in a man prone to engage in difficulties, and a dangerous character when so engaged. It is true that sometimes the influence is the reverse, rendering some men gay, jolly, and even amiable. Indeed, the influence may be so potent as to render one harmless and impotent to do mischief. But such is not the general rule, and the extent of its influence, or how it may affect the particular person, is a matter of further inquiry. Now, if the accused knew that Wren when under the influence of liquor was more dangerous or likely to do harm than when sober, he would naturally infer that he would be in greater danger of being struck by Wren when he attempted to seize the tumbler. How far this fact might have weighed with the jury we cannot say. But the accused was deprived of the benefit of all inquiry on that subject by the ruling of the court, and we think erroneously so.

As to the second question, the form of it and the hypothesis of facts stated in it manifestly did call for his mere opinion or judgment on the conclusion to be drawn from them, of which the jury were quite as competent to decide as the witness. The rules on this subject are clearly discussed and well settled by the opinion of the court in Cooper v. The State, 23 Texas, 337–338, though there may be some doubt as to one of the instances mentioned in the opinion as illustrative of the rules. There was no error in disallowing this question.

But the third question does not seem to us liable to the same objection, as was held by the court. What induced the witness to seize Wren's arm, is not a question necessarily calling for his mere opinion, but rather for an ex-

planation of the facts on which he acted.    True he might
have answered, "I thought Wren was going to `strike
with the tumbler," which is the natural inference from
his act, just as he had stated in reference to the actions
of accused.    This may be deemed strictly an expression
of opinion, but it is such an one, arising at the instant;
in view of all the circumstances, inducing an act by the
witness as may more properly be considered a fact, part
of the transaction illustrating the effect likely to be pro-
duced by Wren's conduct and manner, which could not
be fully expressed and explained in words to the jury.
The effect produced on a bystander by the conduct of
Wren would illustrate the effect likely to be produced
on the mind of the party himself, and we can perceive no
good reason why it should not have been allowed.

The ruling on these questions, however, in view of the
facts in evidence, may not be so material as to require a
reversal of the judgment, and we do not so decide.    .

It remains to consider the errors assigned on the charge·
of the court, and the omission to give proper charges,.
and in overruling the motion for new trial, which clearly
specified the grounds of objection.    The code requires·
that in cases of felony the court shall give a written·
charge, whether asked by counsel or not, which shall dis-·
tinctly set forth the law applicable to the case; and that·
it is the duty of the judge to state plainly the law of the·
case.    (Code of Crim. Pro., Arts. 594, 595.)    Upon this·
it has been frequently decided, as it had been before the·
codes, that "it is only necessary to give such instructions·
as are applicable to every legitimate deduction which the
jury may draw from the facts."    (Johnson v. The State;.
27 Texas, 766, and cases there cited; Hudson v. The State,.
decided at this term.)    Did, then, the charge of the court·
sufficiently comply with these rules?

It almost literally copies from the code the definition·
of assault with intent to murder, and the criterion of the·

intent, the definitions of murder in each degree, assault and battery, and simple assault, and gives the law of self-defense, but omits the law of aggravated assault and battery, and of reasonable doubt on the evidence. The instruction as to self-defense concludes in direct application to the case, thus: "If the party killed had been disarmed by a third party, and was in such a condition as to be unable to inflict death or some serious bodily injury on the party killing, at the time the fatal blow is struck or shot fired, then the law of self-defense will not apply." The charge is concluded with an additional paragraph, thus: "If one provoke a difficulty with the apparent intention of killing his adversary, then and in such a case the law of self-defense does not apply."

At the request of appellant's counsel, the court also charged that the party, "when unlawfully attacked, is not bound to retreat, in order to avoid the necessity of killing his assailant. The attack, however, to justify such homicide, must be such as produces a reasonable expectation or fear of attack or of death, or of some serious bodily injury, in the person assailed." And also, "If the jury believe, from the evidence, that Wren unlawfully and violently attacked the defendant, and that said attack upon defendant produced in defendant's mind a reasonable expectation or fear of death, or of some serious bodily injury, and there was no means in the reach or power of defendant by which the threatened injury could have been prevented, then defendant was justifiable, and the jury will acquit."

The primary charge quoted is evidently only applicable to the facts testified, that Wren's arm was seized and held by Hix when the former seized or attempted to seize the tumbler, so that in fact, at the moment accused fired, Wren was unable to throw the tumbler at him. The charge, assuming these facts to be true, leaves out of view altogether the question whether the accused saw, or

was in a position to see (Morris being between the parties), at the moment, or had time to observe, that Wren was so held, or time to think whether he was held so firmly as to know that he was disabled from assailing him.

This view of his situation, and the state of his mind, whether he had reasonable ground to fear or expect an immediate assault with the tumbler, was not given to the jury; nor were they instructed that the accused was entitled to the benefit of reasonable doubt of his guilt fairly and naturally arising on the evidence, which we think should always be given by the court in cases of felony. We think that the conclusion of the jury from this primary charge would legitimately be, that as Wren's arm was in fact held, and he was unable to assail accused with the tumbler, therefore accused was not justifiable.

It is argued that the subsequent charges given supplied this defect. But it will be perceived that they do not direct the attention of the jury to that view of the case with the clearness and point of the first charge, and we think did not counteract its effect. Be this as it may, the last paragraph of the primary charge was calculated to mislead the jury, by counteracting his defense. It tells the jury, in effect, that if accused provoked the difficulty with apparent intention to kill Wren, then his plea of self-defense was invalid.

To what evidence this charge could reasonably apply we are unable to see. The parties had previously been friendly, and the quarrel suddenly arose. The banter of accused to Wren to play at cards for money does not appear to have been insulting to him. There appears nothing unusual in such a proposal between such parties, and therefore no intention to provoke a difficulty, with or without intention to kill Wren, can legitimately be drawn. The first rude or insulting words came from Wren. His anger seems to have been unnecessarily aroused, and the difficulty really arose from his conduct. This charge of

·the court therefore was inapplicable to the case. It as-
·sumed a state of fact not shown, which probably preju-
·diced appellant's defense. Taking all these irregulari-
·ties into consideration, and the facts, we are not satisfied
·that justice has been done. The judgment will therefore
·be reversed and the cause remanded.

REVERSED AND REMANDED.