### R. J. SWANCOAT *v.* THE STATE.

1. ADULTERY. — To constitute the crime of adultery under the Code of this state, there must be some sort of living together, or cohabitation; adulterous acts of casual recurrence will not suffice. But repeated adulterous interviews at a given place, or even at different appointed places, may, it seems, be such cohabitation as will constitute the offense.

2. SAME — INFORMATIONS. — The sufficiency of an information for adultery is not to be tested by precedents or adjudications of other states, but by the requirements of our own laws. It will be held sufficient if, in plain and intelligible words, and with such certainty as to enable the accused to plead the judgment in bar of another prosecution, it charges the offense in substantial conformity with its statutory definition, and alleges its commission at a date anterior, but not so remote as to show that the prosecution is barred by limitation.

3. SAME — AVERMENT OF TIME. — The living together, or cohabitation, need not be charged with a *continuando*, but may be alleged as on a single designated day.

4. FORMER ACQUITTAL. — The defense of former acquittal is not available under the plea of not guilty, but must be pleaded specially, alleging an acquittal by a jury in a court of competent jurisdiction. A judgment quashing a previous indictment because barred by limitation is not pleadable as a former acquittal.

5. SAME. — Bigamy and adultery are not the same offenses, nor maintainable by the same evidence; and, therefore, a former acquittal of bigamy can constitute no defense against a charge of adultery.

APPEAL from the County Court of Travis. Tried below before the Hon. J. W. SMITH, County Judge.

The information was filed June 13, 1877, and charged that the appellant " did, on the first day of August, 1876, then and there live in a state of cohabitation and adulterous intercourse with," etc. The sufficiency of this allegation is one of the leading features of the case, being questioned because not charged with a *continuando* clause.

The only plea filed was that of not guilty. After the State closed its evidence, the defense introduced a transcript from the District Court of Travis County, of the proceedings therein had upon an indictment against the appel-

o

dant for bigamy, filed April 10, 1877. This indictment alleged that the bigamous marriage took place on or about April 17, 1870, and proceeded to aver a bigamous cohabitation from that date until January 1, 1877 — a period, it will be perceived, which comprised the date on which the information in the County Court charges the commission of the adultery. Besides the indictment, the transcript from the District Court exemplified a motion to quash it, specifying two grounds: first, that it charged no offense; and, second, that if it did charge any offense, the same was barred and defeated by the statute of limitations. And, lastly, the transcript set out the judgment of the District Court, rendered May 15, 1877, quashing the indictment because the offense was barred by the statute of limitations.

This was all the evidence adduced by the defense, and the State introduced none in rebuttal. The court below — a jury having been waived — adjudged the appellant guilty of adultery as charged in the information, and assessed against him a fine of $750; from which judgment this appeal is taken.

*Hancock, West & North*, for the appellant. The information is not deemed sufficient, because it does not set out the offense as defined by the statute; nor does it sufficiently describe the living together of the parties in the unlawful state contemplated by the statute. That part of the information deemed objectionable will presently be set out.

It should be borne in mind that the offense of " adultery " is different and distinct from the offense of " living in adultery." They consist of different elements.

In Mr. Bishop's work on Statutory Crimes, pages 426–440, this difference is clearly pointed out, and these two misdemeanors are treated by that author, in separate chapters, as distinct offenses.

Adultery is the voluntary and willful carnal intercourse of a married man with a woman other than his wife, or of a

married woman with a man other than her husband.   Bouv. L. Dic., 76, *verb*. "Adultery;" Bishop's Stat. Cr. 426, secs. 654, 655; 2 Bishop's Cr. Law, sec. 9.

At common law this was no offense (2 Bishop's Cr. Law, sec. 9); but if kept up too long and notoriously, it might, according to some authorities, become a nuisance, and subject to indictment as such.   *The State* v. *Moore*, 1 Swan, 136.   According to other authorities, it was not a nuisance, and was not the subject of indictment.   *The State* v. *Bronson*, 2 Bailey, 149.   In New York it is no offense. In Texas, also, adultery of itself is not punishable as an offense.   But under our statute the living together of a man and woman in adultery is a misdemeanor.   Pasc. Dig., 429, art. 2014.   A single act of adultery is expressly declared not to constitute an offense.   1 Pasc. Dig., art. 2025.

In order to prove the charge of living together in adultery, it must be shown that the parties cohabited together. 1 Pasc. Dig., art. 2025.   Cohabitation is the habitual living together of the parties as man and wife.   See 37 Texas, 349; 1 Bishop's Mar. & Div., 5th ed., 645, sec. 737, note 4. It cannot be presumed from proof of a single act of criminal intercourse.   *The Commonwealth* v. *Calef*, 10 Mass. 153. The parties must be proved to have lived together, not for an hour, or for a day, but habitually.   "Living in adultery," says Bishop (Stat. Cr., sec. 697), "is not constituted by a single act of unlawful commerce, even if the one act is had in pursuance of a previous engagement between the parties."   And though they meet and stay together for the purpose of such carnal intercourse, it does not violate this statute, because these acts do not constitute the living together contemplated by it.   *Carrotti* v. *The State*, 42 Miss. 334; *McLeland* v. *The State*, 25 Geo. 477; *Smith* v. *The State*, 39 Ala. 554.

The case of *Glase* v. *The State*, 9 Ala. 283, would, at first blush, seem to hold that a single act of illicit inter-

course would be sufficient to prove the charge of living together in adultery; but in the subsequent case of *Collins* v. *The State*, 14 Ala. 608, the last case is modified, if not in fact overruled, the court saying: "If the offense charged had been an occasional act of criminal intimacy, it would be punishable only *in foro conscientiæ;* municipal justice could not reach it."

In *Smith* v. *The State*, 39 Ala. 554, though the proof was clear that the parties met and remained together under a previous agreement to have illicit intercourse, and did in fact carry out their purpose, yet, as it was but one act, the statutory offense of living in adultery was held not to be made out.

These last two cases modify the rule in *Glase* v. *The State*, *supra*, which is very harsh. Waterman, in his Criminal Digest, regards *Glase* v. *The State* as overruled.

The information under consideration fails to sufficiently allege the fact that the parties lived together habitually in adultery, as contemplated by the statute. *Wright* v. *The State*, 5 Blackf. 358.

The averment is that the defendant "did, on the first day of August, 1876 [and at no other day], then and there live in a state of cohabitation and adulterous intercourse" with the female therein named. *The People* v. *Gates*, 46 Cal. 52.

The offense is not laid with a *continuando*, and this, though not necessary in a charge of adultery, is essential in an accusation of living in adultery.

In fact, this information follows the well-known and approved forms of an indictment for adultery, and if this was an offense in this state, the information has properly charged it. It sets out fully the single act or acts of adulterous intercourse which may have occurred on August 1, 1876 (see a correct form of such an indictment in Bishop's Stat. Cr., sec. 672), but it does not follow the correct form of an indict-

ment for living in adultery, given with approval in the same work (sec. 700), and which is taken from Bicknell's Criminal Practice, page 446, and reads thus : " That A B, on the — day of —, and from that day continuously, until the — day of —, did unlawfully live in adultery with C D, a woman,'' etc.

The information before the court should have alleged a continuous adulterous intercourse from August 1, 1876, down to January 1, 1877, or some other time, so as to show on its face that the parties lived together and cohabited, as the statute demands.

Our statute is explicit on this point, and reads as follows : "A single act of adultery is not sufficient to bring the offense within the meaning of this chapter, unless proof be made that the parties live together.''

Does not the previous indictment and acquittal of the appellant in the District Court present a bar to the present prosecution based on this information?

Where a prosecution is defeated by a plea of limitation, and a judgment to that effect is rendered, such a judgment is in every respect as effectual a shield against a second conviction as an acquittal or conviction on the merits.

This point has often been decided. *United States* v. *White*, 5 Cranch, 39 ; *The State* v. *Robinson*, 9 Fost. 274 ; Whart. Cr. Law, secs. 446, 447.

Under our statute (Pasc. Dig., arts. 2014–2022) the offenses of unlawful marriage, living in adultery, fornication, and incest are all classed together as kindred offenses of different grades, and are treated of alike under one general head.

" Title 12.    Offenses against public morals, ' decency, and chastity,' the highest offense being unlawful marriage.''

Bigamy, or unlawful marriage, as it is termed with us, is one of those offenses (as defined in our Code), like treason, murder, rape, arson, robbery, larceny, burglary, etc.,

in which there can be several degrees, and in which the greater offense may include one or more lesser crimes. See, on this point, the interesting chapter and accompanying diagrams of crime in book 4, chapter 26, of Bishop's Criminal Law, where this whole subject is fully treated.

The principle that many offenses are like circles with a common center but different *radii*, and one within the other, is fully recognized, not only by our Code, but by our decisions.

Paschal's Digest, article 3095, provides that where an offense consists of several degrees, the jury may acquit of the higher and convict of any degree inferior to that charged. See, also, Pasc. Dig., art. 3096.

Paschal's Digest, article 3106, also provides that where a defendant is prosecuted for an offense which includes within it lesser degrees, he may be convicted of any of the lower degrees. See, also, Pasc. Dig., art. 3107.

In Wharton's American Criminal Law, 6th edition, volume 3, section 2294, the doctrine that a misdemeanor is contained in, and swallowed up by, the felony, where they meet, is fully discussed, and the attention of the court to this reference is respectfully invited. This doctrine, that author shows, is fully recognized in Massachusetts, New York, Pennsylvania, and Michigan, and, he might have added, in Texas also.

This rule, in its fullest force and broadest acceptation, has not been received with so much favor in other states. But in one form, and that, too, in the only form in which we desire to apply it in the present case, it has been almost universally received, and its application rarely, if ever, disputed, either in England or in the United States. In every instance in which the first step towards the commission of the misdemeanor is in itself a felony, there the misdemeanor, being but a corollary thereto, is merged in such fel-

ony; and the felony being prosecuted to final judgment, no prosecution can be had for the misdemeanor. Here the first step is a felony.

Bishop, in his first volume of Criminal Law, section 686, says: "The doctrine is that although, where a man has done a criminal thing, the prosecutor may carve as large an offense out of the transaction as he can, he is not at liberty to cut but once."

Under this rule it has been solemnly adjudicated in New Jersey (*The State* v. *Cooper*, 2 N. J. Eq. 361) that where a man burns a dwelling-house in which a human being is consumed, and for that has been convicted of arson, the State having selected the offense, he could not afterwards be convicted of murder.

If a man in this state, having a wife living, unlawfully marries here another female and lives with her, is he not guilty of the felony of unlawful marriage? and is there any doubt but what, by the same act, he is also guilty of the misdemeanor of living in adultery?

If the State elected to prosecute him for the felony to-day, and he be acquitted, will any one contend that after this the State can again, to-morrow, prosecute him for the misdemeanor, which is inseparable from, and is a constituent part of, the felony of which he has been acquitted? Such is the case at bar. *Boggess* v. *The State*, 43 Texas, 348; *Lewis* v. *The State*, 1 Texas Ct. App. 345; *Thomas* v. *The State*, 40 Texas, 36.

It cannot, therefore, be denied that under our statute — and as has been done in other states, under similar laws — on an indictment properly framed to charge a living in adultery, a conviction for fornication could be had, if there was such an offense under our laws. *The State* v. *Foster*, 31 Texas, 578.

In the same manner, under an indictment for theft, a person could be convicted of embezzlement; under a charge

of arson, every species of malicious burning which the law reaches could be punished; on a charge of rape upon a daughter, a conviction for incest could be had; and on a prosecution for seduction, a person could be convicted of fornication. None of these propositions can be disputed.

Is it any the less clear and self-evident that, according to the well-established doctrines of the common law, living in adultery may be embraced and included in unlawful marriage? They are each offenses against public morals, and belong to the same kind of crimes, varying only in degrees.

We do not wish to be understood as contending for a moment that an acquittal or conviction for bigamy forbids a prosecution under our statute for living in adultery. What we do contend for, however, is that while parties are living together — not in adultery in its ordinary sense, but, in a state of unlawful marriage, as man and wife — and one of them is, during that period of time, indicted for the offense of unlawful marriage, and is either acquitted or convicted, that such a prosecution is a bar to a subsequent charge for the smaller offense of living in adultery for the same period of time. 43 Texas, 347.

If, after a disposition of the first charge, the defendant should again live in a state of adultery with the same person, then, of course, he would again become liable to indictment for a repetition of the crime, by committing this subsequent, distinct, and separate act.

Again, by an examination of our past and present legislation, both civil and criminal, from the days of the republic down to the present time, on the subject of living together in a state of unlawful marriage, it will be seen that the same pains and penalties, and the same consequences, never attended the condition of unlawful marriage in Texas as followed under the common law and under the legislation of most of the states of the Union.

Under the laws of Spain and Mexico, which were in force here, except where changed by statute, until the introduction of the common law (March 16, 1840), unlawful marriages like the one under consideration were recognized as conferring, under certain circumstances, certain legal rights, and were not regarded as adulterous in their character. The following cases fully discuss the subject: *Smith* v. *Smith*, 1 Texas, 633; *Carroll* v. *Carroll*, 20 Texas, 741; *Yates* v. *Houston*, 3 Texas, 433; *Rice* v. *Rice*, 31 Texas, 180.

The 9th section of the ordinance of the consultation of the republic of January 16, 1836, legalized a large number of marriages which were supposed to be unlawful. *Sapp* v. *Newsom*, 27 Texas, 539; *Nichols* v. *Stewart*, 15 Texas, 230. It was not the policy of the republic or state to place them under the ban.

At common law, and in most of the states, a son born out of a state of lawful wedlock, and the offspring of an unlawful marriage, was, and is, considered illegitimate. He is *nullius filius*, and has no inheritable blood or quality in him; in short, he is a sort of outcast in the eye of the law.

Such is not now, and has never been, the law in Texas; while a son born of parents living in adultery is illegitimate, a son born in a state of unlawful marriage is no bastard, but a lawful son.

Our statute on this subject (Pasc. Dig., art. 3427) reads as follows: " The issue  *   *   *  in marriages deemed null in law shall, nevertheless, be legitimate." *Lee* v. *Smith*, 18 Texas, 145; *Babb* v. *Carroll*, 21 Texas, 765.

A marriage such as that described in the indictment is by all authorities " a marriage deemed null in law." 1 Bishop's Mar. & Div., 5th ed., sec. 300 *et seq*.

But, whatever may be the law elsewhere, the state and condition of unlawful marriage is recognized by our laws

as something different from a mere adulterous union. The children of such a marriage are legitimate, and can inherit.

It follows, therefore, that living together in a state of unlawful marriage is not the same offense as that of living together, without any form of marriage, in a state of adultery; so that it would seem a charge of living in adultery cannot be sustained by proof that the parties were living together as man and wife, though in a state of unlawful marriage.

If, on the other hand, the constituent elements of the offense are in each case the same, and one offense includes the other, then it inevitably follows that the State, having chosen to prosecute the party for the offense of unlawful marriage, cannot now maintain a prosecution for living in adultery for the same acts and during the same period.

*George McCormick*, Assistant Attorney-General, for the State.

WINKLER, J. Counsel for appellant, in an able brief, have presented the assignment of errors in the form of two interrogative propositions, as follows:

" 1. Is the information, tested by itself, sufficient to uphold the judgment?

" 2. If it is, does not the previous indictment and acquittal in the District Court operate as a bar to the present information? "

As to the first question, it is argued that the information is not deemed sufficient, because it does not set out the offense as defined by statute; nor does it sufficiently describe the living together of the parties in the unlawful state contemplated by the statute.

The sufficiency of the information must be tested by the provisions of the Penal Code and Code of Criminal Pro-

cedure on the subject. In making this investigation we can derive but little aid from the adjudications of our own courts on the precise point of inquiry. Not only so, but the decisions of other jurisdictions afford but an uncertain guide, for the reason that, not having access to many of the statutes which have been construed, in order that we may compare them with our own, we are unable to see the precise applicability of their rulings to the construction of our own statutes. Nor yet can much authoritative information be derived from the common-law authorities, from the fact that adultery, though prosecuted in common-law courts, is not strictly a common-law offense.

Mr. Archbold says: " Our statutes making adultery punishable in common-law courts do not give a definition of the offense. Such," he says, " is frequently the case in our criminal codes as to the higher crimes ; they are not defined in our statute-books, but are assumed to be well known as offenses at common law, and, under the general term denoting the offense, it is declared by law to be a crime, and the mode of trial and measure of punishment are alone prescribed by statute." 3 Archb. Cr. Pr. & Pl., title " Adultery," sec. 615.

Such was doubtless the idea of the author of the Texas Code in regard to the crime of adultery, and hence the object seems rather to have been to prescribe the mode of trial and the measure of punishment than to define the precise legal meaning of the word ; to declare who are guilty of the offense and in what it consists, how the offender is to be tried and the measure of the punishment which may legally be imposed for the offense ; declaring, as has been done, what acts, under what circumstances and what relationships, parties may be punished for this offense, doubtless supposing that the offense was too well understood to require a more particular explanation of its meaning.

The statute provides, then, that " every man and woman

who shall live together in adultery   *   *   *   shall be punished by fine not less than one hundred nor more than one thousand dollars ;'' and, also, that '' it is sufficient to prove in trials for living in adultery that the parties cohabited together, and that one of them is married to some other person,'' and prescribing how proof of such marriage may be made.    And '' where two persons live together in a state of cohabitation, one of them being married [to some other person, evidently], they are both guilty of adultery, according to the sense in which the term is here used, though only one of them be married.''    And it is also provided that '' a single act of adultery is not sufficient to bring the offense within the meaning of this chapter (ch. 2, title 12), unless proof be made that the parties live together.''    Penal Code, arts. 392–395 (Pasc. Dig., arts. 2022–2025).

We hold, then, that a man and woman who shall voluntarily live together, or cohabit together, they not being lawfully married to each other, but one of them being, at the time of living or cohabiting together, married to some other person, would be guilty of the crime of adultery within the meaning of the statute.   '' The elements of this crime are : (1) there shall be an unlawful connection ; (2) that the guilty party shall, at the time, be married ; (3) that he or she willingly committed the offense.''   1 Bouv. L. Dic. 76.    And we are further of the opinion that, under the statute as above referred to, there must be some sort of living together, or cohabiting, to constitute the offense.    This is the legitimate interpretation of the statute, taking into consideration its several modes of expression.    For example : '' Every man and woman who shall *live together* in adultery '' (art. 392) ; '' it shall be sufficient to prove in trials for *living* in adultery that the parties *cohabit* together '' (art. 293) ; '' when two persons *live together* '' (art. 394) ; and '' a single act of adultery is not sufficient to bring the offense

within the meaning of this chapter, unless proof be made that the parties *live together*" (art. 395, above set out).

In fact, there is no expression or intimation in the Code that a single act, or even an occasional act, of adulterous intercourse would constitute the offense of adultery, unless in connection with the further fact that the parties live or cohabit together.

On the subject under consideration Mr. Bishop says: "'To constitute *'living together'* in adultery, * * * something more than an occasional private interview is required; there must be a notoriety to the conduct of the parties, or they must live or lodge, at times at least, under the same roof, or something must be done of the sort." 2 Bishop's Cr. Law, sec. 28.

Without holding that this learned author is entirely correct as to the extent to which he goes, for the reason that our statute does not make *notoriety* any part of this offense, we do think that whilst one such interview would not, that repeated adulterous meetings at any given place, or even different places — as, for instance, at houses of assignation — would perhaps be such a cohabiting as would constitute the offense of adultery. So much as to the offense, and what it would be sufficient to charge in an information.

With reference to the requirements of the statute as to what informations generally must contain, and the manner of commencing prosecutions by information in the County Courts, see Code Cr. Proc., art. 403 (Pasc. Dig., art. 2870), and the County Court Act of 1876 (Gen. Laws 1876, p. 17, sec. 8).

All that is required in stating the offense is set out in the seventh subdivision of article 403, as follows: "That the offense be set forth in plain and intelligible words"— that is, that an information for adultery must set forth the offense of adultery "in plain and intelligible words." To describe a statutory offense in the language of the statute, or substantially so, has generally been held sufficient.

The rules laid down in article 398 and certain other articles of the Code, with respect to indictments, are made applicable to informations. Article 398 is as follows: " The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense."

This has been so held in numerous cases decided by the Supreme Court and this court. The Code does not seem to require this offense to be charged with a *continuando.* We are of opinion that the information does sufficiently set out the offense as defined by the statute, and does sufficiently describe the living together of the parties in the unlawful state contemplated by the statute.

The criminal pleader, and, in fact, any pleader, would do well to consult recognized precedents; but whilst this is undoubtedly true, yet, in testing the sufficiency of a criminal pleading, our own laws must control when their behests are clear and explicit.

The information charges a living together at a stated time. In informations, all the Code requires as to time is that the time of the commission of the offense be some date anterior to the filing of the information, and that the offense does not appear to be barred by limitation. Code Cr. Proc., art. 403, subdiv. 6 (Pasc. Dig., art. 2870). All the requirements of the law have been met in the information.

With reference to the second question: Does not the previous indictment and acquittal of the appellant in the District Court present a bar to the present prosecution, based on this information? The question would be more satisfactorily stated in this wise: Can an indictment charging the accused with bigamy, alleged to have been committed on April 17, 1870, to which the statute of limitations had been successfully pleaded in the way of a motion to quash the indictment, and the motion sustained, be successfully pleaded

in bar of a prosecution for living in adultery with the same person with whom the bigamous connection was charged in the indictment for that offense, the second prosecution charging the offense to have been committed on August 1, 1876?

We are of opinion this question should have been specially pleaded, and the matter submitted to the jury, in connection with the plea of not guilty. Former conviction and former acquittal are two of the three special pleas which one who may be accused of crime is permitted to make. The plea of former acquittal must show " that he has been before acquitted by a jury, of the accusation against him, in a court of competent jurisdiction." Code Cr. Proc., art. 484 (Pasc. Dig., art. 2951).

Such special pleas as set forth matter of fact proper to be tried by a jury shall be submitted and tried with the plea of not guilty, and if the plea be not excepted to, it shall be considered that issue has been taken upon it. Code Cr. Proc., arts. 503, 510 (Pasc. Dig., arts. 2972, 2979). " The jury is the judge of the facts in every criminal case." Code Cr. Proc., art. 593 (Pasc. Dig., art. 3058). And whilst the verdict in a criminal action must be general, yet, " when there are special pleas upon which the jury are to find, they must say in their verdict that the matters alleged in such special pleas are either true or untrue. Code Cr. Proc., art. 626 ; (Pasc. Dig., art. 3091).

The proofs with regard to the former acquittal were admitted over objections by the State, but no bill of exceptions was taken to the ruling. The requirements of the Code, plain as they are, seem to have been entirely overlooked or disregarded with regard to this plea of former acquittal. The plea was not made in the manner pointed out by the Code ; but if it had been properly made, it was not sufficient, and was liable to exception under article 509 of the

Code (Pasc. Dig., art. 2978), because it is not pretended that the acquittal was not by the verdict of a jury.   As to what the plea of not guilty puts in issue, see article 497 of the Code (Pasc. Dig., art. 2965); and by the same article the special pleas mentioned in article 484, which include the plea of former acquittal and the facts in support thereof, are not allowed to be proved under the plea of not guilty.

But, aside from all this, the plea, if it had been properly made and proved, would not have constituted a bar to the present prosecution, for the reason that the offenses are not the same, nor maintainable upon the same testimony.   It is not contended that the charges must be identical in every respect; for, when the evidence necessary to support a second indictment would have been sufficient to procure a legal conviction upon the first, the plea is generally good. *Thomas* v. *The State*, 40 Texas, 36; *Lewis* v. *The State*, 1 Texas Ct. App. 323.   And for an extended discussion of the subject, and also that of former jeopardy, see *Vestal* v. *The State*, 3 Texas Ct. App. 648.

As to the evidence to support the charge of adultery, see 2 Greenl. on Ev., sec. 40 and following.   The proof in this case, agreeably to the rules there laid down, was full and complete.

The appellant has been tried upon a sufficient information for an offense against the law, in a court of competent jurisdiction, and upon a sufficiency of legal testimony.   No exception was taken to any action of the court which can avail the accused; and from the whole case as shown by the record, in the light of able arguments, we find no legal cause to disturb the conviction.

The judgment is affirmed.

*Affirmed.*