[No. 2121.]

## PETE JOHNSON *v.* THE STATE.

1. AGGRAVATED ASSAULT AND BATTERY — FORMER CONVICTION — MURDER — CASE STATED.— Upon proof that he cut and wounded D. with a knife on the 10th day of August, 1884, the defendant, on the 16th day of the following October, under an indictment charging an assault with intent to murder the said D., was convicted of an aggravated assault and battery. On the 12th day of the following November, D. died from the effects of the said wounds, and defendant was indicted and tried for his murder. To this prosecution the defendant pleaded his former conviction of aggravated assault and battery, and sustained his plea by proof that the transaction involved in the two prosecutions was the same, except that, at the time of the said former conviction, the death of D. had not occurred. The special plea, being properly submitted to the jury, they found against it. *Held,* correct; the rule being that if, after a conviction for assault, the assaulted party dies, the conviction for assault is no bar to a prosecution for murder. There is no identity between the trial for assault during the life of the injured party and that for murder after his death, for the death creates a new crime. See the opinion *in extenso* on the question.

2. MANSLAUGHTER — FACT CASE.— See the statement of the case for evidence *held* sufficient to support a conviction for manslaughter.

APPEAL from the District Court of Washington. Tried below before the Hon. I. B. McFarland.

The indictment in this case charged the appellant with the murder of John Davis, in Washington county, Texas, on the 10th day

of August, 1884, by cutting him with a knife. His trial resulted in his conviction of manslaughter, and his punishment was assessed at a term of two years in the penitentiary.

The transcript brings up the following as a preface to the statement of facts:

"The appellant, Pete Johnson, was indicted, September —, 1884, in the district court of Washington county, Texas, for assault with intent to murder one John Davis on the 10th day of August, 1884. He was tried under that indictment on the 16th day of October, 1884, and convicted by the jury of aggravated assault, and fined $25. On the 12th day of November, 1884, John Davis died. Appellant was then indicted at the March term of the district court for the murder of John Davis. His case was continued at that term of the court, and at the next term, viz.: on the 5th day of October, 1885, he was tried under the second indictment. Appellant pleaded former acquittal and not guilty. The jury found him guilty of manslaughter, and assessed his punishment at two years in the penitentiary. He was given a new trial. He was again tried on the 21st day of October, 1885, entering the same pleas of former acquittal and not guilty. He was again convicted by the jury of manslaughter, and his punishment assessed at two years in the penitentiary. The attorney for the State demurred to the special plea of former acquittal, which demurrer was overruled, and the special plea submitted to the jury along with the plea of not guilty. The defendant asked for a new trial; his motion was overruled and he has taken an appeal to the court of appeals."

Steve Richardson was the first witness for the State. He testified that he knew the defendant, and he knew John Davis prior to his death. The deceased died during the fall of 1884, from the effects of a knife wound inflicted some time before by the defendant. The witness was present and saw the difficulty in which that wound was inflicted. The conflict between the deceased and the defendant occurred at the house of Gamester Davis. Witness, on his arrival at Gamester's house, stopped at the fence, and found the defendant on the place, talking boisterously and cursing the deceased. The deceased came up to the fence a short time after the witness did. He then had in his hand a large ash walking stick, from which the bark had been peeled. He stopped outside of the yard near the fence. Just before the deceased arrived, the defendant went from in front to the yard behind Gamester's house. The deceased came up a few minutes later and asked witness: "Where is that d—d son-of-a-b—h, Pete Johnson?" Witness, with the view

of preventing a collision, told the deceased that the defendant had gone home. Deceased, in reply, said to witness: "It is best that he has gone home. If he hadn't, I would have broken his head with this stick." About this time the defendant returned to the front from the back yard, and said to the deceased: "I thought I satisfied you this morning about that chicken. Why did you tell Mr. Mullins that I stole that chicken?" Deceased, in answer, denied that he had accused defendant, to Mr. Mullins, of stealing his, deceased's, chicken. The defendant replied that deceased lied; that he had accused him to Mr. Mullins. Deceased retorted that, in charging him with having accused him to Mr. Mullins, the defendant was a liar, but that, as a matter of fact, he, defendant, did steal his, deceased's, chicken. This manner of quarreling was kept up until deceased started in at the front gate of the yard. At that time the defendant was standing within three or four steps of the corner of the house and in the direction of the front gate. A fire was burning in the yard near the place where the defendant was standing, at which the wife of Gamester Davis had been cooking supper. It burned brightly, and illuminated the whole yard. An ax with which Gamester Davis had been chopping wood lay near the fire. Witness saw the defendant stoop to pick up the ax, just as the deceased started in at the gate. He called to deceased not to go into the yard, as defendant would certainly cut him with the ax, but the deceased, without halting, passed through the gate and advanced upon the defendant, holding the ash walking stick in his right hand, the butt or large end foremost. His hand clasped the stick about the middle. When the deceased had advanced towards him, about three or four steps from the gate, the defendant caught up the ax and threw it at the deceased, the ax striking him in the side. This was done just about the moment witness called to deceased not to enter the yard in pursuit of the defendant. When the ax struck the deceased, he dropped his stick, staggered and careened forward, but retained his feet, and continued to advance upon the defendant. The defendant, after hurling the ax, advanced upon the deceased, and the two met three or four steps from the gate on the inside of the yard. They clinched when they met, and proceeded to punish each other with blows.

During the fight at close quarters, that is, while the defendant and the deceased were striking each other at the time they were clinched, witness saw an open pocket-knife in the hand of the defendant, and saw him striking the deceased with the knife, which had a blade about four inches long. Witness called to Gamester

Davis to aid him in putting a stop to the fight, scaled the fence and succeeded in separating the combatants. Defendant, on being pulled from deceased, turned and ran out of the yard. Witness took the deceased by the arm and led him out of the yard. When they got outside, deceased said: "I believe that son-of-a-b—h has cut me." Witness then examined his body and found blood staining his clothes and flowing from three or four gashes in the left side. His hand was also scratched. The cuts described were inflicted by the defendant with his knife. The entrails were protruding from the cuts, and one of the bowels — said by some one present to be the maw — was punctured. The deceased was then taken home and was put to bed, from which he never arose, except when he was helped. He died on the following 12th day of November, from the effects of the said wounds, inflicted by the defendant with the knife aforesaid. The cutting occurred in Washington county, Texas, on or about August 10, 1884.

The witness testified, for the State, at the October term of the district court in the case of *The State of Texas* v. *Pete Johnson*, this defendant, charged with assault with intent to murder John Davis. The witness testified on that trial exactly as he has testified on this. The defendant in that case was the same Pete Johnson now on trial for the murder of the same John Davis, whom he was then tried for assaulting with intent to murder. Davis was not dead at the time of the first-mentioned trial. He died from the effects of his wounds subsequent to that trial, and prior to his indictment in this case. The witness never saw but the one fight between the defendant and the deceased.

The State introduced other witnesses who testified severally that the wounds were inflicted on the deceased by the defendant with a knife, on or about the 10th day of August, 1884; that the deceased died from the effects of those wounds on the 12th day of November, 1884; that Gamester Davis and deceased, who were brothers, and defendant were tenants on the farm of Mr. Mullins, in Washington county, Texas; that deceased lived on that farm about two hundred yards southwest from the house of Gamester Davis, and that the defendant lived about two hundred yards northeast from Gamester Davis's house. At this point the State closed.

The transcript recites as follows:

"The defendant proved that, at the September term, 1884, of the district court of Washington county, Texas, this defendant was indicted for an assault with intent to murder the same John Davis for the murder of whom he is indicted in this case; that, on the 16th

day of October, 1884, the defendant was regularly tried before a jury in this court on the said first-named indictment, and was acquitted of assault with intent to murder and was convicted of aggravated assault and fined $25, which fine he paid; that at the time of said trial John Davis was living; that at the spring term of this court, A. D. 1885, the indictment in this case was presented in the district court; that, upon a previous day of this present term of this court, the defendant was put upon his trial on this indictment, and was, by the jury, found guilty of manslaughter; that a new trial was granted by the consent of the district attorney and the defendant; that afterwards, on the 21st day of October, 1885, the defendant was again put upon trial on the indictment in this case. The defendant files two special pleas:

" ' 1. Setting up the fact of his indictment for assault with intent to murder John Davis, his trial and acquittal, and judgment of discharge.

" ' 2. Setting up his trial under the indictment at a former day of this term, and his acquittal of murder, and conviction of manslaughter.'

" The jury found the second plea to be true, and found the first plea to be not true. The proof showed that there was but one fight between the defendant and the deceased; that the wounds were inflicted on or about the 10th day of August, 1884, and that John Davis died from those wounds November 12, 1884; that when defendant was indicted and tried under the first indictment in October, 1884, John Davis was still living, and that he died in November, thereafter."

The defense next introduced in evidence the following written instruments:

1. His special plea of *autrefois acquit*, which, omitting the caption, reads as follows: " And now the defendant, Pete Johnson, in his own proper person, comes into court here, and having heard the said indictment read, says that the State of Texas ought not further to prosecute the said indictment against him, because he saith that, heretofore, to wit, at a regular term of the district court held in the city of Brenham, State of Texas, and in and for the county of Washington, being the September term of said court, in the year 1884, he, the said defendant, Pete Johnson, was lawfully acquitted of the offense charged in the indictment for which he is now held. That he was there and then put upon his trial upon indictment legally found for assault with intent to murder one John Davis. That he was legally tried by a jury of twelve men and acquitted

of said charge, but found guilty of aggravated assault. That the facts upon which said former indictment and trial was. had are the same as relied on in this case; all of which the defendant is ready to verify. Wherefore he prays for judgment, and that by the court he be discharged from the said premises in the present indictment specified, and that he go hence without day."

    (Signed)                      "Pete $\overset{\text{His}}{\bowtie}$ Johnson."
                                           mark.

"Sworn to and subscribed before me this October 5, 1885.
                        "C. Herbst, C. D. C. W. C."

"And for further answer, if need be, he pleads not guilty to the charge in the indictment.               E. B. Randle,
                         "Att'y for Defendant."

*Indorsed.* "Plea of *autrefois acquit.* Filed October 5, 1885.
                        "C. Herbst, C. D. C. W. C."

2. The following amendment to the foregoing plea: "Now comes the defendant, Pete Johnson, who on oath states, by way of amendment to his plea of former acquittal in this case, filed October 5, 1884 (this day), and for amendment says, that, at the September term of this honorable court, this defendant was regularly put upon his trial before a jury of twelve men, in open court, and upon an indictment for the same offense with which he is now charged in the indictment in this case, and that upon said trial said defendant pleaded not guilty, and after all the evidence for the State and for the defendant had been heard in said cause, and the argument of counsel and the charge of the court, the said jury returned into court a verdict of' not guilty as to said charge upon which this defendant was then and is now on trial, but said jury found this defendant guilty of an aggravated assault, and said defendant has paid his fine so assessed by said jury, and was thereafter discharged from custody. That in the said indictment on which the said defendant was then and there tried, this defendant was then and there charged with one of the grades of murder of John Davis; and said defendant was then and there by said jury duly and legally acquitted of all of the grades of murder of said John Davis; and the said defendant, in the indictment under and upon which he is now on trial, is charged with the murder of the same John Davis. That the two said offenses, as charged in both of said indictments, are one and the same in law and in fact; all of which defendant is ready to verify; wherefore he asks for judgment," etc.

    (Signed)                      "Pete $\overset{\text{His}}{\bowtie}$ Johnson."
                                           mark.

(Subscribed, sworn to, indorsed, etc.)

3. The bill of indictment, number 2974, returned by the grand jury of Washington county, Texas, on the 12th day of September, 1884, which said indictment charged the defendant with an assault with intent to murder John Davis, in Washington county, Texas, on the 10th day of August, 1884.

4. The verdict of the jury indorsed on the back of the said indictment, which reads as follows: "We, the jury, in the case of *The State* v. *Pete Johnson*, find the defendant guilty of aggravated assault, and assess his fine at ($25) twenty-five dollars.

(Signed)                              "WILLIAM BRAY, Foreman."

5. The judgment of the court upon the said verdict, decreeing the recovery of the said fine by the State of Texas, and remanding the defendant to the custody of the sheriff pending the payment of the same, and of costs.

6. The defendant's second special plea, which was as follows: "Now comes the defendant, Pete Johnson, in his own proper person, who, on being sworn, on oath says: "That on the 12th day of September, 1884, this defendant was indicted in this same case in this court, cause number 2974, *The State* v. *P. Johnson*, and at the September term, 1884, this defendant was put upon his trial before a jury in this court, and was then and there by said jury acquitted of every grade of murder, as charged in this case, upon the person of John Davis; and the verdict of the jury in that case was adopted by this court, and has never been appealed from nor reversed, but is now of full force and effect; and this he is ready to verify.

"And this defendant further says that the indictment in this case, number 3040, *The State* v. *Pete Johnson*, was filed in this court March 10, 1885; that the charge in this case is that the defendant, P. Johnson, is charged with the murder of John Davis; that it is the same offense as that of said cause number 2974 as aforesaid, for which defendant was tried and acquitted. That the said defendant was, at this term of this court, viz., on October 5, 1885, put upon his trial before a jury, and was by said jury acquitted of every grade of the offense of murder of the said John Davis above manslaughter; and was by said jury convicted of manslaughter, with a term of two years assessed as a penalty; that defendant did not appeal from said judgment, but that the court, at the instance of the district attorney, and of the defendant, gave to this defendant a new trial.

" 3. That both of said indictments were and are for one and the same offense, and in truth and in fact but one act and one offense, and this defendant has twice been put in jeopardy for the same of-

fense; all of which he is ready to verify.    Wherefore he asks to be discharged, etc.

(Signed)                                "Pete ⋈ Johnson."
His — mark.

"Sworn to and subscribed before me this October 21, 1885.

"C. Herbst, C. D. C. W. C."

*Indorsed.*   "Filed October 21, 1885."

The following also appears in the statement of facts:

"The State of Texas )
3040        *v.*               }
    Pete Johnson.         )

"These special issues are submitted to the jury upon the defendant's special plea, viz.:

"1. Was the defendant tried on this same indictment on October 5, 1885?

"2. Was he convicted on said trial of the crime of manslaughter? Answer yes or no.               I. B. McFarland, Judge, etc."

"We, the jury, answer the questions propounded above as follows, viz.:

"To the first question we answer yes.

"To the second question we answer yes.

"C. C. Bryan, Foreman.

"We, the jury, find the plea of former jeopardy of the defendant in this cause to be untrue.               C. C. Bryan, Foreman."

The motion for new trial raised the questions discussed in the opinion.

*E. B. Randle* and *C. R. Breedlove*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

Willson, Judge.    On August 10, 1884, the defendant cut John Davis with a knife.    He was indicted for an assault with intent to murder said Davis by said act of cutting, and under said indictment was, on the 16th of October, 1884, convicted of an aggravated assault and battery, and fined $25, which fine he paid.    On November 12, 1884, John Davis died from the effect of said cutting, and thereafter the defendant was indicted for the murder of said John Davis by the same act of cutting, and was convicted of manslaughter; from which conviction this appeal is prosecuted.

Defendant pleaded in bar of this prosecution his former conviction of an aggravated assault and battery, and the evidence fully sustained this plea, and showed that said assault and battery was

the same transaction charged in the present indictment, except that at the time of said former conviction the death of Davis had not occurred. This special plea was properly submitted to the jury, and they found against it; and in this we think there was no error. Mr. Wharton says: "Where, after a conviction of assault, the assaulted person dies, the conviction of assault is no bar to a conviction for murder. The reason is that as at the time of the conviction of assault there could have been no conviction of the murder, the prosecution for the murder is not barred by the conviction of the assault." (Whart. Cr. Pl. & Prac., § 476.) Mr. Bishop says: "If, after a battery and a conviction for it, the assailed person dies of his wounds, an indictment may be maintained for the homicide; not, it appears, because the battery is the less offense, but because the blow which had not produced death is, when viewed in the light of its results, a thing different from the blow which had produced death." (1 Bishop, Cr. Law, § 1059.)

There never can be the crime of murder or manslaughter until the party assaulted dies; these crimes have no existence in fact or law till such death. It cannot, therefore, be said that one is tried for the same crime when he is tried for assault during the life, and tried for murder or manslaughter after the death, of the injured party. The death of the assaulted party creates a new crime. At the time the defendant was convicted of the assault and battery upon Davis, the court in which such conviction was had did not have jurisdiction of the offense here prosecuted, because said offense had not then been completed, and could not then have been prosecuted. Hence there is no conflict between the rule announced above and our statute, and the decisions under that statute. (Code Crim. Proc., art. 553.) It is true that the greater offense always includes the lesser. And it is also true that where an offense consists of different degrees, and the defendant, upon indictment or information, is convicted or acquitted of any grade of such offense, such conviction or acquittal is a bar to any further prosecution of the offense. (Code Crim. Proc., art. 553; *Givens* v. *The State*, 6 Texas, 344; *Thomas* v. *The State*, 40 Texas, 36; *Vestal* v. *The State*, 3 Texas Ct. App., 648; *White* v. *The State*, 9 Texas Ct. App., 390.) But these rules do not apply where the higher grade of the offense has not been completed at the time of the conviction or acquittal of a lesser grade included within it, because such higher grade did not then exist. We think the court correctly instructed the jury upon this subject, and the jury correctly found against the special plea of former conviction.

There are no exceptions in the record to the charge of the court, and no additional charges were requested by the defendant. We discover no material error in the charge given to the jury, and the evidence sustains the verdict. The judgment is affirmed.

*Affirmed.*

[Opinion delivered November 28, 1885.]