[No. 2451.]

## JOE JACKSON v. THE STATE.

1. PRACTICE—CHARGE OF THE COURT.—Article 677 of the Code of Criminal Procedure requires the trial court to distinctly set forth in the charge to the jury the law applicable to the case as made by the evidence.
2. SAME.—Error in a charge of the court, if promptly excepted to and saved by proper bill, requires of this court the reversal of a conviction without inquiry as to the effect such error may have had upon the trial. (Code Crim. Proc., Art. 685.)
3. SAME—NEW TRIAL.—If no exception was reserved to the error when it was committed, the next place where it can be availed of is on the motion for new trial, wherein it is provided by statute (Code Crim. Proc., Art. 777), as a sufficient ground for new trial that "the court has misdirected the jury as to the law, or has committed any other material error calculated to injure the rights of the defendant."
4. SAME—PRACTICE IN THIS COURT.—The rule governing this court in cases wherein an erroneous charge is neither excepted to nor assigned as a ground for new trial in the court below, is as follows: "If there is a material misdirection of the law as applicable to the case, or a failure to

give in charge to the jury the law which was required by the evidence in the case, and such error or omission was calculated, under all of the circumstances of the case, to prejudice the rights of the defendant, this court should for either cause reverse the judgment."

5. SAME—INCEST.—See the opinion *in extenso* and the statement of the case for evidence adduced upon a trial for incest *held* to demand of the trial court a charge to the effect that the jury were the exclusive judges of the facts proved and of the weight to be given to the testimony; and note the circumstances under which the omission of the said charge becomes fatal, although it was not excepted to nor made a ground in the motion for new trial.

APPEAL from the District Court of Washington. Tried below before the Hon. I. B. McFarland.

The appellant in this case was convicted of the offense of incest, the indictment charging the criminal act to have been committed with his step daughter, Ada Bland, in Washington county, Texas, on the first day of February, 1886. A term of five years in the penitentiary was the penalty assessed by the verdict.

Ada Bland was the first witness for the State. She testified in substance that she was fifteen years old and was the daughter of Rachel Jackson, who, as Rachel Bland, married the defendant when the witness was four or five years old, since which time witness has lived with her said mother and the defendant, her step father. One evening in October or November, 1885, the defendant, being at the house of Mr. Hairston, who lived in the neighborhood, sent home for the witness to come to Hairston's to turn a grindstone for him while he sharpened an axe. Witness repaired to Hairston's house and turned the grindstone for the defendant, and when the axe was sharpened they started home together over a near route through Hairston's field. When they reached a point about a hundred or hundred and fifty yards distant from Mr. Mose Hairston's house, which point was near an old dismantled house and among some trees, the defendant stopped and told the witness that she "had to do what he wanted her to do." Witness asked him what it was he wanted her to do. He replied that he wanted her to "give him some." The witness told him, in reply, that she would not do it; that he was her step father and ought not to ask her to do wrong. He then told witness that he would kill her if she did not yield to him. He then caught witness, threw her down on the ground, got on top of her and by force had carnal knowledge of her. The witness did not consent to this act of sexual

intercourse, but was simply ravished by the defendant. Having accomplished his purpose on the witness, the defendant took her to the public road and thence home.

The scene of the rape was about fifty yards from the main public road leading to the town of Independence. A dry branch, bordered with brush, weeds and under growth, ran between the place of the rape and the public road. The under growth was dense enough to hide defendant and witness from the view of any person on the road. A peach orchard grew between the house of Mr. Hairston and the place of the rape. Hairston's house was situated on a hill, and any one at the house, looking at the time the rape was committed, could have seen the defendant and the witness. The defendant threw the witness by force, and held her down while he performed the carnal act. Arrived at home, witness and defendant found witness's mother and several others. Witness did not report the occurrence to any one. Defendant tried on two subsequent occasions to compel the witness to submit to his passion, but she escaped him by flight. A few days after his second ineffectual attempt to make the witness submit, the defendant came home drunk, and said that he was going to raise hell and run every body off the place. The witness then told her grand mother and Henry Daniels of what she had suffered at the defendant's hands. The carnal act was perpetrated upon the witness about a week before a certain circus performed in Independence. That day being located by counsel as November 17, 1885, the witness said that she was ravished on November 10, 1885. She gave birth to a baby on June 29, 1886. The baby was born small, but well formed and perfectly developed, and had since been as well as babies generally are. It was a yellow colored baby, lighter of color than the witness, who was a brown or yellowish negress. The defendant was much darker than witness, and almost black. No body ever had carnal knowledge of the witness but the defendant, and he only the one time described. The witness wept a little, but made no outcry during the carnal process.

The State proved by the witnesses W. T. Willie, Mose Bird, Tom Sims and one Caroline that the defendant was the husband of Rachel Jackson, formerly Rachel Bland, the mother of Ada Bland, by a former husband. W. T. Willie testified further that Ada's child was born on June 29, 1886. The child was much lighter in color than either Ada or the defendant. Ada's reputa-

tion for chastity in the neighborhood in which she lived was bad.

*Harvin & Keifer*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Appellant appeals from a conviction for incest, the alleged crime having been charged to have been committed with his step daughter. She was the main, and in fact the only witness who testified to the facts pertaining to the commission of the imputed crime. We will not say that her testimony is improbable or untrue, but it certainly has failed to impress us with such cogency as to its truth that we can confidently rely upon it with unhesitating belief. Without recapitulating the facts deposed to, the salient features in substance are that the carnal act was committed by force and without her consent, within about fifty yards of a public road, from a hundred to one hundred and fifty yards of a house upon a hill, from which the parties could be seen; that there was no outcry or alarm made by the prosecutrix. She did not tell her mother or any one else about it.· She never had carnal intercourse with defendant but the one time, and no one else except defendant had ever had carnal connection with her. That the act was committed on the tenth of November; that her child was born on the twenty-ninth day of the following June—seven months and nineteen days after—was well formed, mature and healthy; that defendant is almost black, the prosecutrix brown, and the child a yellow baby of lighter color than the mother. In addition to this testimony, the State produced four witnesses, who only proved the fact that the prosecutrix was the daughter of the wife of defendant, and that he and the mother had been legally married. One witness for the defense testified that he knew the reputation of the prosecutrix for chastity in the community in which she lived, and that it was bad. There was no other testimony adduced on the one hand or the other.

Now, upon this state of facts, what was the plain, clear and unmistakeable duty of the court, under the statute which requires that in his charge to the jury he shall distinctly set forth the law applicable to the case?" (Code Crim. Proc., Art. 677.) Most clearly it was that, after instructing them as to the law of the particular crime, he should have told them, in view of the pecu-

liar features of the case we have enumerated, and which thus
stood out in such bold relief, either that they were the exclusive
judges of the facts (Code Crim. Proc., Art. 676), or better and
more pertinent still, that they were "the exclusive judges of the
facts proved and of the weight to be given to the testimony."
(Code Crim. Proc., Art. 728.) If ever there was a case loudly
calling for an instruction in conformity with these statutory
declarations, in our opinion the case here presented is one. We
search the charge in vain for any such instruction; and we
pause here to remark that, in all our varied experience with
criminal trials, we can not recall a single instance in which some
such instruction was not given the jury, though in many cases
perhaps it was really unnecessary to do so, there not being the
slightest suspicion as to the credibility of the witnesses or weight
of the testimony.

But in this instance the charge was not excepted to as given,
nor was this singular omission called to the attention of the
court either by special instruction or in the motion for a new
trial. In such condition of the record, what is the rule to gov-
ern the action of this court? Error in a charge, if promptly
excepted to and a bill of exceptions saved thereto, will necessi-
tate a reversal of the judgment for the error, without inquiry as
to the effect such error may have had upon the result of the trial.
(Code Crim. Proc., Art. 685; Paulin v. The State, 21 Texas Ct.
App., 436, and authorities cited.) Where no exception has been
reserved at the time, then the next place where the error can be
availed of is on the motion for new trial, wherein it is provided
by statute as a sufficient ground that "the court has misdirected
the jury as to the law, or has committed any other material
error calculated to injure the rights of the defendant." (Code
Crim. Proc., Art. 777.) When the matter is not called to the
attention of the court in either of the modes mentioned, then
the true rule is as stated in Elam v. The State, 16 Texas Court
of Appeals, 34, to the effect that, "if there is a material misdi-
rection of the law as applicable to the case, or a failure to give
in charge to the jury the law which was required by the evi-
dence in the case, and such error or omission was calculated
under all the circumstances of the case to prejudice the rights
of the defendant, this court should for either cause reverse the
judgment." (Citing Bishop v. The State, 43 Texas, 290. See also
Lewis v. The State, 18 Texas Ct. App., 401.)

Now in the case under consideration, without being told they

were the exclusive judges of the weight of the testimony and the credibility of the witnesses we can well imagine that the jury might have felt bound by the evidence, no matter how much so ever they might have doubted or disbelieved the witness. Under the peculiar attitude of this case we believe the court committed a fatal error in omitting to instruct the jury as to their prerogative in passing upon the weight of evidence and credibility of the witnesses, and that appellant in all probability has been seriously prejudiced thereby; and for this error the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered November 27, 1886.