## JIM GARRISON V. THE STATE.

No. 17672. Delivered June 19, 1935.

The opinion states the case.

*Richard Mays & A. P. Mays,* of Corsicana, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for ten years.

Appellant and deceased were neighbors and had been intimate friends for many years. Both had been long addicted to the use of intoxicating liquor. The record indicates that they had never had a quarrel of any character. On the 24th of December, 1934, appellant met deceased and they proceeded toward appellant's home in a trailer which was drawn by a pair of mules. On the way to their destination they secured some whisky, of which they took several drinks. After reaching appellant's home they entered the house, where, according to the version of appellant, they drank a toddy. They then went to the lot to look at some of appellant's mules. Appellant testified further that deceased stated to him that he had to return home; that when deceased left he (appellant) entered the house; that he saw some crows in his field and picked up his shotgun for the purpose of trying to kill them; that he sat down by the fire; that at this point the screen door in the front entrance opened and he saw a man coming toward him wearing a mask of white paper or cloth, and carrying a knife in his hand; that he told this man to stop and thereafter fired one time at him and kiled him. Witnesses arriving at the scene of the homicide discovered the body of deceased, but apparently found no mask.

Appellant defended largely on the ground that he was temporarily insane at the time he fired the fatal shot, his position being that the habitual use of intoxicating liquor had brought about what expert witnesses termed acute alcoholic hallucinosis. In answer to hypothetical questions physicians gave support to appellant's theory of temporary insanity.

Bill of exception No. 14 presents the following occurrence: The State introduced an undertaker who testified that he examined the body of deceased; that the wound was on the right side about two inches below the collar bone and about one and one-half inches from the median line; that said wound was about two and one-quarter inches in circumference. After the witness had so testified the State asked him to identify a shirt that deceased had worn. The shirt was then introduced in evidence over appellant's objection. On the right side of said shirt and corresponding with the wound described by the witness there was a hole made by a gunshot. All around said hole, according to the certificate of the trial judge in the bill of exception, there was a plain and gruesome blood stain and caked blood. The shirt was submitted to the jury for their in-

spection. During the entire trial it remained on the counsel table directly in front of and in plain view of the jury. Apellant not only objected to the introduction in evidence of said shirt, but on three different occasions requested that it be removed from the view of the jury. We quote from the certificate of the trial judge as follows: "And be it further remembered that there was no controversy in the evidence of any kind or character as to the wound having been inflicted by a shotgun; its location on the body of the deceased; that it was capable of producing death; its diameter; its direction of penetration as being clean or jagged; or in any other respect, was there any conflict or dispute in the evidence as to said wound."

In bill of exception No. 4 it is shown that counsel for the State, in argument to the jury used language as follows: "Aude Washburn (deceased) cannot be here to testify, gentlemen, in his behalf, but this old shirt with the life blood of Aude Washburn is crying out for vengeance and justice." It is certified in the bill that at the time he made the remarks counsel had the bloody shirt in his hand and waved same before the jury. Appellant's objections to said argument was overruled.

The opinion is expressed that said bills of exception 14 and 4, considered together, reflect reversible error. In Huntsman v. State, 254 S. W., 1108,—the conviction being for an aggravated assault—it is shown that the State introduced in evidence, over Huntsman's objection, the bloody clothing worn by the injured party. In concluding that reversible error had been committed this court, speaking through Judge Hawkins, used language as follows:

"The State introduced in evidence over objection the bloody hat, bloody shirt, and bloody overalls worn by the assaulted party. Objection was urged on the grounds: (a) That the clothing did not serve to elucidate or illustrate any point or solve any disputed question; (b) that there was no question as to the nature and extent of the wounds, nor as to how they were inflicted; (c) and that such testimony could only serve the purpose of inflaming the minds of the jury against appellant.

"The State, through her Assistant District Attorney General, concedes error in the admission of the articles named because the infliction and nature of the wounds was not controverted, and the clothing would serve no purpose to solve any controverted issue, and further admits that their introduction was evidently inflammatory. As supporting his reasons for making such concessions, we are referred to the cases cited under Branch's Ann. Penal Code, sec. 1855; Cole v. State, 45

Texas Crim. Rep., 232, 75 S. W., 527; Aldridge v. State, 91 Texas Crim. Rep., 648, 241 S. W., 145.

"We quote from Cole's Case, supra, as follows:

" 'It sometimes becomes relevant testimony to admit the clothes of a deceased to explain the nature of the wound or some connecting fact, or to assist in developing the case in some way. This character of testimony has been the subject of many decisions, and usually it has been held that their admission was proper. But in this case there was no necessity for it. It explained no fact and was relevant to no controverted issue. That deceased was shot by appellant was an admitted fact. The nature of the wound, the character of it, its location and everything in connection with it was clearly proved; and there was no controversy about it. The admission of the bloody clothes before the jury could serve no purpose except inflame their minds against accused. If it was relevant to any fact, and was properly admitted, the fact that it may have had an injurious effect upon appellant's case would not render its admission improper; but the exhibition of clothes, like any other fact, is admissible or not, as it may or may not be pertinent or relevant to some issue in the case. These clothes could explain nothing, and the sole tendency was to create prejudice.' "

The judgment was reversed solely because of the admission of said bloody clothing. In Huey v. State, 197 S. W., 202, a penalty of ninety-nine years confinement in the penitentiary was assessed upon conviction for murder. The bloody clothes of the deceased were introduced in evidence when they served to elucidate no issue in the case. It was held that the bill of exception relating to the matter presented reversible error. We quote the language of Judge Davidson in the opinion as follows:

"There was nothing in the case before the jury at the time the clothes were admitted upon which to contradict appellant. It was while the widow of the deceased was on the stand testifying and through her that these clothes were admitted. The bill is quite lengthy and unnecessary to repeat. She was the second witness placed on the stand by the State in making out its case originally. The defendant had not testified, and there was nothing to contradict so far as he was concerned. The court, it would seem from his qualification, admitted the clothes only as bearing upon the location of the wound. There was no question about the location of the wound, and none raised on the trial. Deceased was shot in front with a shotgun at close range, because the shot did not scatter. The wound went in about 2 or 2½ inches on the right side from medial line of

the deceased's body and through the waistband of his pants. This was the only wound on him. There was but one shot fired. None of the shot entering the body went through. There could be no issue on the question as to the location of the wound on the body of deceased. The clothes were not admitted to contradict appellant, because appellant had not testified. The bill with reference to this matter is rather lengthy, and it is deemed unnecessary to embody it in the opinion."

See, also, Aldridge v. State, 241 S. W., 145.

We quote from 18 Tex. Jur., page 340, as follows: "And the courts frequently have held such garments to be inadmissible—a bloody hat, coat, shirt or pants, a powder-burned jumper—the basis of decision being that in the circumstances the garments did not tend to elucidate any disputed question and that they served only to create prejudice on the part of the jury. 'That such evidence has a tendency to inflame the minds of the jury is a recognized incident of criminal law.'"

It is shown in bill of exception No. 1 that appellant's proof was to the effect that he had long been addicted to the use of intoxicating liquor. It is further shown that his defense was that he was suffering from acute alcoholic hallucinosis which rendered him incapable of knowing or appreciating that in killing deceased he was doing wrong. In support of his contention that he was temporarily insane, appellant introduced physicians who testified, in answer to hypothetical questions, that they were of the opinion that appellant was temporarily insane and did not know the difference between right and wrong at the time he fired the fatal shot. The court charged the jury on the issue of temporary insanity. In his opening argument, private prosecutor used language as follows:

"Gentlemen of the jury: If you do happen to acquit this man and say by your verdict: 'Not guilty by reason of insanity'; if you do find that he was crazy and did not know right from wrong at the time he committed this crime; what is going to be the result of that? What is he going to do? What assurance have you got that just because a man drinks liquor and gets crazy drunk and slays his fellow man; what assurance have you got that it won't happen tomorrow?"

We think appellant's objection to this argument should have been sustained. In overruling the objection the court thereby placed his stamp of approval on said argument, which constituted an appeal to the jury to disregard the charge of the court authorizing appellant's acquittal even if they believed he was insane at the time he killed deceased. To say that a jury

may disregard a plea of insanity and convict the accused because such insanity may recur is to nullify the statute which provides that no act done in a state of insanity can be punished as an offense. Art. 34, P. C. In view of the fact that the argument was improper and that in overruling the objection thereto the trial court in effect approved the statement of counsel for the State, we think the bill of exception reflects reversible error. See Rogers v. State, 13 S. W. (2d) 116.

In his charge the court failed to instruct the jury that they were the judges of the facts proven, the credibility of the witnesses and the weight to be given their testimony. The court failed to amend the charge in response to appellant's exception. The exception was well taken. Weatherford v. State, 21 S. W., 251; Jackson v. State, 3 S. W., 111; Barbee v. State, 4 S. W., 584; Wilbanks v. State, 10 Texas App., 642. See, also, Taylor v. State, 100 S. W., 393.

We think that upon another trial the substance of appellant's requested instruction No. 2 on the issue of insanity should be submitted. See Merritt v. State, 45 S. W., 21.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commision of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.