# APRIL 15, 1936

## CLIFFORD DOGGETT V. THE STATE.

No. 17710.  Delivered December 11, 1935
Rehearing Granted April 15, 1936.

The opinion states the case.

*Frank Sparks,* of Eastland, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, death.

The trial was had in Eastland County, Texas, where Mr. Threet died after having been shot by appellant at a point in Callahan County. The proof shows that after having shot Mr. Threet appellant took from his person something over one hundred dollars in money, and that at a time anterior to the trial of the instant case appellant had been tried in Callahan County for the robbery of Threet, and had been finally con-

victed of said offense. The briefs and bills of exception raise many interesting questions, the material ones being here adverted to and discussed.

Appellant urges that there is a lack of corroboration of one Van Cleve, a self-confessed accomplice and co-actor with appellant at the time and place of the alleged shooting, who testified for the State that on the night of August 14, 1934, he was at the home of appellant in Cisco, Eastland County, Texas, and the latter asked him if he wanted to make some money, and told him that he had a girl who was going to take a man out in the country the next morning and that they could go out and rob him; that he and the girl were going to spend the night at some place. The witness testified that the next morning, on August 15th, at about seven a. m. appellant came to where witness was, woke him, and the two went to appellant's house where they breakfasted. While eating appellant said "There they go". In fifteen or twenty minutes witness and appellant got in the latter's car and went on the Abilene highway west from Cisco. He further testified that appellant's son Earl was at the family home when they left Cisco. In the car in which the two men were was a 30-30 and a 22 caliber rifle. After going west on the highway the parties turned off south, and presently met a man who was walking; they went through a gap and a mile or more down in a pasture where they parked the car, and on foot walked a mile or so farther to where they came up a ravine and saw deceased Threet and one Mary Lou Howell on a pallet not far from a tank; some trees were about twenty-five yards from Threet and the woman and between the parties. The witness and appellant went up to these trees, appllant having the 22 rifle and witness the 30-30. They had cloths over their faces for a disguise. When they got to the trees appellant called to deceased and told him to put up his hands. The deceased and the girl were sitting on a pallet. Deceased said he would not put up his hands, whereupon appellant, holding the 22 rifle in his hand, told deceased if he did not put up his hands he would shoot him, and when deceased replied he would not, appellant shot. Deceased fell back on the pallet. Appellant went to him, and after tying the hands of deceased with a trot line cord, took from the front pants pocket of deceased a coin purse, and from his hippocket a bill fold. Witness said he observed that the head of deceased was bloody and ran away from the scene, but was overtaken by appellant about a mile distant. They went back to the car, a Ford V-8, and in it drove back to Cisco.

Appellant told witness he got about $130.00 from deceased. Both purses were thrown away by appellant before they got to town. They had the rifles in the car, in which witness also observed a handbag or overnight bag, which was later left by appellant at the corner of Avenue D and 13th Street in Cisco.

From Cisco Van Cleve said he and appellant went to Rominy, a little town some 'eleven miles south from Cisco, where they got oil, gas and a cold drink; after leaving Rominy and before they got to Rising Star appellant got out of the car and hid the guns referred to; they then went on through Rising Star to Goldthwaite, at which place they arrived about three p. m. on the same day. They remained in Goldthwaite several hours getting oil, gas and whisky and seeing various persons, one of whom named Reeves they carried in the car to some place. Leaving Goldthwaite they then drove back to Cisco, getting there about 9 or 9:30 p. m. They separated, appellant telling witness that he would later divide the money. Witness went to Slaton where he was arrested on August 19th. After denying any knowledge of the transaction surrounding the robbery or the killing, Van Cleve changed his mind and made a confession in line with what we have above said. He took the officers to where he said appellant hid the guns, and there the officers found a 30-30 and a 22 rifle.

The killing was on August 15, 1934. As corroborating evidence and by parties other than the accomplice, it was shown that appellant and the Howell woman, hereafter referred to as Lou for brevity, spent the latter part of the night of August 14th at a tourist camp in Cisco; that about 8 a. m. next morning the woman was seen in a car with Mr. Threet, deceased, going west on the highway from Cisco; later a witness met a car going south from the highway which he said was occupied by Threet and some one, either a child or a girl; still later a man on foot testified that he met Threet and Lou in a car about a mile from Threet's ranch,—and just after passing them this witness met appellant in a car accompanied by a man, and that said car went in the same direction Threet and the woman had gone. This witness noticed that the car of appellant appeared to have been in a wreck, and had a mashed hub cap, and various witnesses to the identification of the parties also referred to the appearances of said car. After the killing, at the scene of same a pallet was found; tracks of a woman were in the mud and soft dirt at a nearby tank. The foot of Lou was put in said tracks and fitted, and a spot of mud was observed on the heel of her shoe when she was ar-

rested, and was identified as identical with the mud at the tank. Witnesses at Rominy and Goldthwaite saw appellant and Van Cleve in the Ford V-8 with the mashed hub cap and evidences of a wreck, they being observed at Rominy between eleven and one o'clock that day, and at Goldthwaite, which was some ninety miles from Cisco, from four to six o'clock in the afternoon.

Appellant was arrested a little after dark on August 16th, the day after the killing. His son Earl was with him at the time. Hicks, the arresting officer, took appellant back to Cisco in his car, and Mr. Nordyke, another officer, went back in appellant's car with said son. Appellant's car was taken by the officer to the city hall. Shortly after reaching this place appellant and his son were observed together, no officer being with them. Earl, the son, was then seen to go out to his father's car and enter same. He was seen standing in the back part of said car. When he left the car he went east toward where an abandoned tractor stood near the railroad track some two blocks from the city hall. The next morning an officer went with Earl to said old tractor where Earl reached under same, pulled out a purse and gave it to the officer, who took it and its contents to the district attorney, who opened it and took out of same $110.00 in money of the denomination of five, ten and twenty dollar bills. The daughter of deceased testified that the afternoon before the killing she saw her father count $135.00 in five, ten and twenty dollar bills and put all of same in a bill fold, which he put in his hippocket; that he also had several dollars in a coin purse which he had in his front pants pocket.

An autopsy revealed that the deceased was shot in the top of the head, a small hole being found, and in his brain a doctor found a piece of lead about the size of a 22 bullet. A search of appellant's car at the city hall in Cisco after his arrest, revealed the presence of a number of 30-30 cartridges and also several 22 cartridges, some of the latter being empty. The guns described were found near the road from Cisco to Goldthwaite not far from Rising Star at a point where a car had turned out from the road and a man's track went toward some bushes under which the guns were concealed. A woman testified that she picked Lou up on August 15th at a point on the highway some eight miles west of Cisco and brought her into that city. It was shown that Lou lived at apartments not far from where appellant lived. On August 15th, at about 12:30 p. m., a witness testified that she found Lou's suit case sitting

inside her door, that she had not seen it there until then. When the suit case was opened it contained a 25 automatic pistol. Officers testified that shells used in such a pistol had steel bullets. We regard these facts as affording sufficient corroboration of the accomplice. Appellant offered no testimony, except to identify the records pertaining to his former conviction.

Appellant and Van Cleve were, without dispute, shown together and in appellant's car practically all during the day of August 15th. That appellant spent the night with Lou the night before the killing was proved. That Threet with her in his car was followed to his ranch in the early morning of August 15th by appellant and Van Cleve was established. That Threet was there shot and mortally wounded is not questioned. That appellant and Van Cleve, in the same mashed Ford V-8, came from toward Cisco to Rominy eleven miles out, shortly after eleven o'clock that same day, is not denied; that near Rising Star, eight or ten miles from Rominy, one of the occupants of said car hid the two guns, is also established. They were in Goldthwaite, nearly or quite a hundred miles from the scene of the shooting, by three o'clock on said day. They returned to Cisco where they separated. When arrested the next day, in a compartment of appellant's car were shells fitting both the rifles mentioned. After being alone with appellant, shortly after his arrest, his son Earl went to appellant's car, got in, stood up, left the car and went toward the abandoned tractor, to which he returned with an officer the next morning and from which he got a sum of paper money identical in kind and almost in amount with that had by deceased when he left his home in the afternoon of August 14th. None of these facts are denied in whole or in part. Appellant's son was not used as a witness. It seems of little moment, from the standpoint of guilt, whether appellant fired the fatal shot or Van Cleve, they both being present and acting together, and both being in the car of the older man from the time they were seen following Threet and the woman out to the ranch, all during said day, according to the testimony of other people than Van Cleve.

Appellant also makes the point upon his appeal that he had been already convicted of robbery with firearms, and that same was the same act, transaction and offense as here involved, and that this operated as a bar to his conviction herein. He filed a plea of former conviction, which is provided for in Art. 508, C. C. P., wherein it is said of the plea: "That he has been convicted legally, in a court of competent jurisdiction, upon the

same accusation, after having been tried upon the merits for the same offense."

Citing Moore v. State, 33 Texas Crim. Rep., 166; Herera v. State, 35 Texas Crim. Rep., 607; Spannell v. State, 83 Texas Crim. Rep. 418; Williams v. State, 58 Texas Crim. Rep., 193; Wright v. State, 37 Texas Crim. Rep., 627; Art. 1, Sec. 14 of our Bill of Rights, and Thompson v. State, 99 Texas Crim. Rep., 470, appellant insists that he has been so formerly convicted.

That "robbery" and "murder" are different offenses seems plain from the definition of each in our statute, one being the intentional killing of a human being, and the other the intentional taking from some person his property by means of an assault or violence, or putting in fear of life or bodily injury. The definition of neither offense comprehends the other, nor is either an element of the other. We are in entire accord with the correctness of the authorities cited by appellant, but are not able to apply their holdings to the facts before us, which after all must be the test.

In the Herera case, supra, Bishop's Crim. Law is quoted. Probably no text writer is held in higher regard for soundness. In the quotation referred to four rules are laid down for determining when the indictments,—involved in pleas in former conviction or acquittal,—are not for the same offense, and the first rule mentioned,—and we might say therefore the one best settled,—is as follows:

"They are not the same when the two indictments are so diverse as to preclude the same evidence from maintaining both."

This is so plain and apt as to leave little need for argument here. The statutory definition and the elements of the crimes of murder and robbery are so widely divergent that the student of criminal law knows at a glance that evidence which would maintain a robbery charge will not suffice to make out a murder case, and vice versa. As above observed, murder does not comprehend robbery, nor robbery murder. In arriving at the guilt of murder specific intent to kill must be shown, and in arriving at robbery, the evidence must show the wrongful obtaining of property of another.

Again Mr. Bishop, in the same section of his work quoted in the Herera case, supra, says: "The offenses are the same whenever evidence adequate to the one indictment will equally sustain the other." Adhering to this quoted rule, and the one above mentioned as correct, will be found the cases of Thomas

v. State, 40 Texas, 36; Lewis v. State, 1 Texas App., 323; Lowe v. State, 4 Texas App., 34; Samuels v. State, 25 Texas App., 537; Ashton v. State, 31 Texas Crim. Rep., 482; Burns v. State, 36 Texas Crim. Rep., 601; Maines v. State, 37 Texas Crim. Rep., 617; Nichols v. State, 37 Texas Crim. Rep. 616; Wheelock v. State, 38 S. W., 182; Taylor v. State, 41 Texas Crim. Rep., 564; Mitchell v. State, 48 Texas Crim. Rep., 533; Thompson v. State, 90 Texas Crim. Rep., 222; Berwick v. State, 120 Texas Crim. Rep., 322. We quote from the Wheelock case, supra:

"Although defendant's plea alleges that the two indictments are for one and the same transaction, yet the exhibit in said plea, to wit, the indictment, when compared with the indictment in this case, negatives the conclusion of said plea, and shows that in the very nature of things it could not be one and the same transaction."

Mr. Bishop also calls attention in Sec. 1058, Vol. 1 of his Criminal Law, to the fact that obviously there is a difference between one volition and one transaction. In Taylor's case, supra, the accused and others, while engaged in the transaction of robbing a train, shot and killed a man on the train. We held that while a part of the same transaction, the offenses were not the same. We quoted with approval at p. 569 the following:

"We think the rule is well established that when one offense is a necessary element in, and constitutes an essential part of, another offense, and both are in fact but one transaction, a conviction or acquittal of one is a bar to the prosecution for the other."

In Thompson's case, supra,—a robbery case,—the facts showed several persons in a room entered by Thompson, who proceeded to order them all to throw up their hands, and then went through the pockets of more than one of the occupants of said room. He was indicted for robbing each separate person. When his case for the robbery of B was called, he interposed his plea of former conviction for the robbery of E,—alleging,—as in the case before us,—that he had been convicted for the very same act, transaction and offense which formed the basis of his prosecution in the case then called. Upon that trial the judge submitted the identity of the offenses, to-wit, the one on trial and the one for which he claimed to have been convicted, to the jury. We held it not necessary to have been so submitted, and in the case of Berwick v. State, 120 Texas

Crim. Rep., 322, we quoted what was said in the Thompson case, supra, as follows:

"The intent here on the part of appellant and his co-principals was to rob everyone whom the evidence shows they did rob. The offense was not completed as to Edwards until his robbery was effected. The evidence as to the completion of the latter offense was admissible in the trial of accused for robbing Barnes because part of the res gestae, but his conviction in the Barnes' case was in no way a bar to this prosecution."

There is not a word of testimony in the record before us which suggests or could support any such theory as that appellant only intended to rob Threet and accidentally or unintentionally shot him. As suggested in the brief of our State's Attorney, the intent to kill is entirely aside from and a different legal proposition from an intent to rob, for the robbery of a dead man is of doubtful comprehension by our robbery statute.

Noticing appellant's other contentions, we observe nothing in the record calling for a charge on accomplice testimony as to Mary Lou Howell, for the obvious reason that she did not testify in this case, nor do we find any testimony calling for a charge, in effect, that one accomplice cannot corroborate another, nor calling for any charge on an accidental killing. We do find in the testimony of Van Cleve a statement which clearly supports the theory of two volitions on the part of appellant in the same general transaction, viz.: Van Cleve said they went out for the purpose of robbing Threet, and that nothing was said about killing him. Evidently the formation of the intent to kill Threet was personal to appellant and aside from the conspiracy of the two men.

For reasons set forth in preceding parts of this opinion we do not think any error appears in the refusal of the court to submit appellant's special charge No. 1, seeking to have the jury find whether the exhibition of the guns,—the shooting of Threet,—and the taking of the money from the person and possession of Threet, was one continuous act, intention and volition on the part of appellant, or of appellant and Van Cleve, or either. Nor do we find any error in the refusal of the court to submit appellant's plea of former conviction. As a matter of law, the proof necessary in the instant case, i. e., that appellant with malice shot and killed Threet, would not and could not have sustained a conviction of appellant upon the robbery charge, which fact, as said in the Wheelock case,

supra, is made evident by comparison of the two indictments. Testimony to support the murder charge involved in the case before us here, as is referred to in many decisions, was admitted upon the trial of the robbery case as part of the res gestae, though not necessary to make out the case upon that trial; so also of the testimony of the taking of the money from the person of Threet, after he was shot down, upon the trial of the instant case. See Wharton's Crim. Law., Vol. 1, Secs. 551-556; Boggess v. State, 43 Texas, 347; Williams v. State, 13 Texas Crim. App., 288; Jerue v. State, 57 Texas Crim. Rep., 213; Thompson v. State, supra; Berwick v. State, supra; Spannell v. State, supra. The last case cited held that it was error for the court not to submit the plea to the jury because of the facts which called for the decision of the jury. In the Spannell case the accused testified that he had been acquitted of killing his wife, and it was shown upon his trial for the murder of his wife that the court had submitted to the jury the issue of his guilt therein predicated upon either his intentional shooting at her, or his intentional shooting at Butler and accidentally killing Mrs. Spannell. In our opinion such a situation raised a fact issue for the jury to pass upon. As above noted, however, in the instant case the total lack of legal sufficience of the testimony offered in support of appellant's former conviction, to support a conviction upon this trial, rendered needless the submission of the identity of the two offenses to the jury in this case. We might call attention to the fact that appellant offered no word of testimony suggesting or supporting any theory of accidental shooting, or the lack of intent on his part to kill Threet when he fired. The statement of Van Cleve that he saw dirt fly up from near a tree, which was some ten feet nearer appellant than Threet was at the time the shot was fired, and which tree from the position occupied by Van Cleve seemed a little out of line between appellant and Threet,—is the only suggestion of an accidental shooting.

When there is no evidence to support the plea of former conviction, or when under conceded facts the plea is no defense, it may be wholly disregarded. Lindley v. State, 122 S. W., 873.

We have gone over each of the other bills of exception found in the record, and have examined them in the light of the argument of able counsel for the appellant, but find ourselves unable to agree with his contentions, and being of opinion that no error calling for a reversal appears in the record, the judgment will be affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In the original opinion the sentence of death was affirmed against the appellant for the murder of L. F. Threet. The conviction was had in the District Court of Eastland County. At the time of the trial of the present case the appellant was under conviction for the offense of robbery of Threet with firearms, he having been convicted in the District Court of Callahan County. He was condemned to suffer confinement in the penitentiary for 99 years. No appeal was taken by the appellant from the conviction of robbery with firearms. At the time of the trial in the present case he was serving the sentence for robbery with firearms.

The appellant's conviction for robbery with firearms is upon the same evidence, same facts and the same transaction as the conviction from which the present appeal is perfected. In the record of this appeal there is a written agreement, sanctioned by the judge presiding, in which it is agreed that the testimony which was given against the appellant on his trial in Callahan County, in which he was convicted for robbery with firearms, is identical with that adduced against him upon the trial from which the present appeal proceeds. The evidence is set out in detail in the original opinion and is, in substance, that the appellant and one Van Cleve went to the ranch where Threet and a companion were present; that in effecting the robbery Threet made some resistance and was shot and wounded by the appellant, who took from Threet the money which he had upon his person; that some days thereafter Threet died from the effect of the wounds inflicted by appellant at the time of the robbery.

From the written agreement mentioned, we take the following quotation:

"It is further agreed that the indictment herein grew out of the alleged shooting of the deceased L. F. Threet on August 15, 1934, at the time and at the scene of the robbery of said L. F. Threet, deceased, for which this same defendant was tried and convicted in said cause No. 3312 in the District Court of Callahan County, Texas, and at no other shooting of the said L. F. Threet."

On the trial herein the appellant filed a plea of former jeopardy, and invoked Art. 1, sec. 14, of the Constitution of Texas, which reads as follows:

"No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put on

trial for the same offense after a verdict of not guilty in a court of competent jurisdiction."

There is a marked distinction between a plea of former conviction and a plea of former acquittal. In a plea of former acquittal, the State may, under certain circumstances, try the accused again upon substantially the same evidence as that previously used. Against a subsequent trial for his life or liberty, when it appears as in the present instance, that the State, for the second conviction of the appellant relies upon the same evidence upon which it had previously convicted him in the first trial, the conviction cannot stand.

In 12 Texas Jur., p. 557, sec. 239, it is said:

"The plea of autrefois convict only requires that the transaction, or the facts constituting it, be the same."

Many cases are cited in support of the foregoing rule. A recent example of the application of the rule is shown in the reversal of the judgment of conviction in the case of Whitten v. State, 94 Crim. Rep., p. 144, in which it was said:

"The State, having carved out of this transaction the offense of the unlawful sale of the liquor and having secured a conviction for that offense, is precluded by that judgment from carving another offense out of the same transaction. This principle is stated by Presiding Judge White of this court in the case of Simco v. State, 9 Texas App., 338, and again in Wright's case, 17 Texas Crim. App., 158, with the utmost clearness. In the cases mentioned, the distinction between the plea of former acquittal and former conviction and the facts upon which they must each rest is thus stated:

" 'Autrefois acquit is only avaidable in cases where the transaction is the same and the two indictments are susceptible of, and must be sustained by, the same proof. These two elements must combine, and are both *sine qua non* to the sufficiency of the plea. *Autrefois convict* only requires that the transaction, or the facts constituting it, be the same.' "

The inhibition against double jeopardy is determined by the facts and circumstances and not by the name of the offense. In Hirshfield v. State, 11 Texas App., 207, this court said:

"Is the name given to the act or acts which constitutes the offense to control when we are seeking to determine whether it be the same offense or not, or must we not look to the act or acts, or the omissions prohibited and punished by the Code, in order to determine this question? We must, in determining whether they were the same offense or not, look to the act, acts or omissions; for these and not the name by which they are

called are denounced by the Code. We therefore conclude that a person shall not be twice put in jeopardy for the same act, acts, or omissions, which are forbidden by positive law, and to which is annexed, on conviction, any punishment prescribed in this Code."

A like interpretation of the meaning of the term "same offense" is found in the text and cases cited in 12 Texas Jur., p. 556, sec. 238, and in 8 R. C. L., p. 145, sec. 130. The subject is also treated in Bishop's Criminal Law (9th Ed.), Vol. 1, sec. 1051.

The facts shown by the record, in our opinion, portray a marked and definite illustration of the application of the principle that when one has been convicted, the State cannot, upon the same evidence, again convict him of the same act of which he has previously been convicted. In the present instance, the proof is conclusive that, in the appellant's conviction for murder, he was convicted of the same transaction and upon the same evidence as that upon which he was previously convicted of the offense of robbery with firearms.

The opinion of this court, written by Judge Henderson in the case of Herera v. State, 34 S. W., 943, is illustrative of the soundness of the contention made by the appellant in the present trial. From the opinion the following quotation is taken:

"Applying the test to ascertain whether or not the indictments are for the same offense, it will be seen that in the second case, charged against the appellant, to sustain the robbery it was necessary to prove the assault. Indeed, the robbery could not be sustained without proof of the same assault for which appellant had previously been convicted on a charge for assault with intent to murder. The offenses, in part, at least, are of a like character. They relate to one transaction. And, while the charge of robbery contains more of criminality than the other, yet upon the assaulting part of the charge, upon which the robbery only could be sustained (though embraced in it), the assault with intent to murder is predicated. The offenses, though bearing different names, would appear, by the rule laid down within our constitutional guaranty, the same."

The case of Moore v. State, 25 S. W., 1120, further illustrates the soundness of the appellant's contention. The conviction in that case was for assault with intent to murder. At a preceding day of the term Moore had been convicted of the offense of robbery from the same person. Upon the convic-

tion last mentioned he predicated the plea of former jeopardy. In the course of the opinion it was said:

"It has been well said that 'the assault or violence in the robbery case being an essential element or ingredient of the offense, and constituting an important and material part of that offense, as it does in the offense of assault with intent to commit murder, and having been once punished in the robbery case, as a material part thereof, it cannot be again punished, as it would be if the judgment below were allowed to stand.'"

See also Taylor v. State, 55 S. W., 961.

The rule to which we have adverted is well settled, and not to apply it to the facts of the present case is to overrule the decisions to which reference has been made. We are aware of no valid reason for announcing a contrary doctrine. It follows that we are of opinion that we were in error in holding the plea of former jeopardy was not available.

Appellant's motion for rehearing is granted, the judgment of affirmance is set aside, and the judgment of the trial court is now reversed and the cause remanded.

*Reversed and remanded.*