## LUTHER HILL V. THE STATE.

No. 21323.   Delivered February 19, 1941.

The opinion states the case.

*Fred Whitaker,* of Carthage, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.

The offense is murder; the punishment, death.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Nellie Mae Hill by throwing the said Nellie Mae Hill down, pouring gasoline on her and setting her afire.

The State introduced in evidence appellant's confession in which he admitted that he had burned the deceased to death by pouring gasoline on her and setting her afire. The dying declaration of deceased introduced in evidence corroborated appellant's confession. Testifying in his own behalf, appellant repudiated the confession. It was his version that he accidentally ignited gasoline which had been poured on deceased. He disclaimed any intention of killing her.

The fragments of burned clothing of the deceased were brought into the court room in a sack and placed on the counsel table within ten feet of the jury. They bore the odor of gasoline. Some of the fragments of clothing were taken out of the sack, identified by a witness and introduced in evidence. The clothing did not serve to elucidate or illustrate any point or solve any disputed question. It was uncontroverted that gasoline had been poured on the deceased, that such gasoline had been ignited, and that she received severe burns. In short, there was no question as to the condition or extent of the burns nor as to how they were inflicted. Proper objection was interposed by counsel for appellant at the time the fragments of clothing were introduced. The opinion is expressed that the bill of exception reflects reversible error. A similar quesiton was involved in Huntsman v. State, 254 S. W. 1108, in which the conviction was for an aggravated assault. It is shown in that case that the State introduced in evidence, over Huntsman's objection, the bloody clothing worn by the injured party. In concluding that reversible error had been committed, this court, speaking through Judge Hawkins, used language as follows:

"The State introduced in evidence over objection the bloody hat, bloody shirt, and bloody overalls worn by the assaulted party. Objection was urged on the grounds (a) That the clothing did not serve to elucidate or illustrate any point or solve any disputed question; (b) that there was no question as to the nature and extent of the wounds, nor as to how they were inflicted; (c) and that such testimony could only serve the purpose of inflaming the minds of the jury against appellant.

"The State, through her Assistant Attorney General, con-

cedes error in the admission of the articles named because the infliction and nature of the wounds was not controverted, and the clothing would serve no purpose to solve any controverted issue, and further admits that their introduction was evidently inflammatory. As supporting his reasons for making such concessions, we are referred to the cases cited under Branch's Ann. Penal Code, sec. 1855; Cole v. State, 45 Texas Cr. R. 232, 75 S. W. 527; Aldridge v. State, 91 Texas Cr. R. 648, 241 S. W. 145.

"We quote from Cole's Case, supra, as follows:

" 'It sometimes becomes relevant testimony to admit the clothes of a deceased to explain the nature of the wound or some connecting fact, or to assist in developing the case in some way. This character of testimony has been the subject of many decisions, and usually it has been held that their admission was proper. But in this case there was no necessity for it. It explained no fact and was relevant to no controverted issue. That deceased was shot by appellant was an admitted fact. The nature of the wound, the character of it, its location and everything in connection with it was clearly proved; and there was no controversy about it. The admission of the bloody clothes before the jury could serve no purpose except to inflame their minds against accused. If it was relevant to any fact, and was properly admitted, the fact that it may have had an injurious effect upon appellant's case would not render its admission improper; but the exhibition of clothes, like any other fact, is admissible or not, as it may or may not be pertinent or relevant to some issue in the case. These clothes could explain nothing, and the sole tendency was to create prejudice."

In Huey v. State, 197 S. W. 202, it is shown that a penalty of ninety-nine years confinement in the penitentiary was assessed upon conviction for murder. The bloody clothes of the deceased were introduced in evidence when they served to elucidate no issue in the case. It was held that the bill of exception relating to the matter presented reversible error. We quote the language of Judge Davidson in the opinion as follows:

"There was nothing in the case before the jury at the time the clothes were admitted upon which to contradict appellant. It was while the widow of the deceased was on the stand testifying and through her that these clothes were admitted. The bill is quite lengthy and unnecessary to repeat. She was the second witness placed on the stand by the State in making out its case originally. The defendant had not testified, and there

was nothing to contradict so far as he was concerned. The court, it would seem from his qualification, admitted the clothes only as bearing upon the location of the wound. There was no question about the location of the wound, and none raised on the trial. Deceased was shot in front with a shotgun at close range, because the shot did not scatter. The wound went in about 2 or 2 1/2 inches on the right side from medial line of the deceased's body and through the waistline of his pants. This was the only wound on him. There was but one shot fired. None of the shot entering the body went through. There could be no issue on the question as to the location of the wound on the body of deceased. The clothes were not admitted to contradict appellant, because appellant had not testified. The bill with reference to this matter is rather lengthy, and it is deemed unnecessary to embody it in the opinion."

See, also, Aldridge v. State, 241 S. W. 145, and Garrison v. State, 84 S. W. (2d) 477.

The following is taken from 18 Texas Jurisprudence, page 340: "And the courts frequently have held such garments to be iadmissible—a bloody hat, coat, shirt or pants, a powder-burned jumper—the basis of decision being that in the circumstances the garments did not tend to elucidate any disputed question and that they served only to create prejudice on the part of the jury. 'That such evidence has a tendency to inflame the minds of the jury is a recognized incident of criminal law.' "

In view of the fact that the death penalty was assessed against appellant, we would not feel warranted in holding that the minds of the jury were not inflamed by the introduction of the clothing of the deceased.

Over appellant's proper objection, the State's counsel was permitted to elicit from appellant that he was in bed with a woman in Louisiana at the time he was arrested. There is nothing in the record to indicate that appellant killed deceased because of any affection he entertained for another woman other than his wife is shown in the evidence. It was the theory of the State that appellant and deceased had been having trouble relative to matters which had no connection with appellant's relationship with any other woman. Hence we are unable to perceive the relevancy of such testimony. It should not have been admitted.

Appellant's plea of former jeopardy was properly overruled. Deceased had not died at the time appellant entered a plea of

guilty to an indictment charging him with having assaulted her with intent to murder her. It is true that the conviction for assault to murder involved appellant's act in pouring gasoline on deceased and setting her afire. However, as pointed out, deceased had not died at the time of such conviction. We quote from Johnson v. State, 19 Texas Cr. R. 453, as follows:

"On August 10, 1884, the defendant cut John Davis with a knife. He was indicted for an assault with intent to murder said Davis by said act of cutting, and under said indictment was, on the 16th of October, 1884, convicted of an aggravated assault and battery, and fined $25.00, which fine he paid. On November 12, 1884, John Davis died from the effect of said cutting, and thereafter the defendant was indicted for the murder of said John Davis by the same act of cutting, and was convicted of manslaughter; from which conviction this appeal is prosecuted.

"Defendant pleaded in bar of this prosecution his former conviction of an aggravated assault and battery, and the evidence fully sustained this plea, and showed that said assault and battery was the same transaction charged in the present indictment, except that at the time of said former conviction the death of Davis had not occurred. This special plea was properly submitted to the jury, and they found against it; and in this we think there was no error. Mr. Wharton says: 'Where, after a conviction of assault, the assaulted person dies, the conviction of assault is no bar to a conviction for murder. The reason is that as at the time of the conviction of assault there could have been no conviction of the murder, the prosecution for the murder is not barred by the conviction of the assault.' (Whart. Cr. Pl. & Prac., sec. 476) Mr. Bishop says: 'If, after a battery and a conviction for it, the assailed person dies of his wounds, an indictment may be maintained for the homicide; not, it appears, because the battery is the less offense, but because the blow which had not produced death is, when viewed in the light of its results, a thing different from the blow which had produced death.' (1 Bishop, Cr. Law, sec. 1059.)

"There never can be the crime of murder or manslaughter until the party assaulted dies; these crimes have no existence in fact or law till such death. It cannot, therefore, be said that one is tried for the same crime when he is tried for assault during the life, and tried for murder or manslaughter after the death, of the injured party. The death of the assaulted party creates a new crime. At the time the defendant was convicted

of the assault and battery upon Davis, the court in which such conviction was had did not have jurisdiction of the offense here prosecuted, because said offense had not then been completed, and could not then have been prosecuted. Hence there is no conflict between the rule announced above and our statute, and the decisions under that statute. (Code Crim. Proc., art. 553.) It is true that the greater offense always includes the lesser. And it is also true that where an offense consists of different degrees, and the defendant, upon indictment or information, is convicted or acquitted of any grade of such offense, such conviction or acquittal is a bar to any further prosecution of the offense. (Code Crim. Proc., art. 553; Givens v. The State, 6 Texas, 344; Thomas v. The State, 40 Texas, 36; Vestal v. The State, 3 Texas Ct. App., 648; White v. The State, 9 Texas Ct. App., 390.) But these rules do not apply where the higher grade of the offense has not been completed at the time of the conviction or acquittal of a lesser grade included within it, because such higher grade did not then exist. We think the court correctly instructed the jury upon this subject, and the jury correctly found against the special plea of former conviction."

In Diaz v. United States, 223 U. S. 442, the court said:

"The homicide charged against the accused in the court of first instance and the assault and battery for which he was tried before the justice of the peace, although identical in some of their elements were distinct offenses both in law and in fact. The death of the injured person was the principal element of the homicide, but was no part of the assault and battery. At the time of the trial for the latter the death had not ensued, and not until it did ensue was the homicide committed. Then, and not before, was it possible to put the accused in jeopardy for that offense."

Among the cases cited in support of the conclusion of the court is Johnson v. State, supra. See, also, Curtis v. State, 3 S. W. 86; 8 Ruling Case Law 148; 16 Corpus Juris 275; Wharton's Criminal Law, 12th Edition, Vol. 1, page 532; 12 Texas Jurisprudence 563.

The case at bar is distinguishable from Doggett v. State, 93 S. W. (2d) 399, in that the deceased in that case had died prior to the conviction for the robbery. In short, the State had carved one time out of a completed transaction and secured a conviction.

The judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.